**UNITED STATES v. FAILLA et al.**

Civ. 256–50.

United States District Court
Third Dist. New Jersey.
April 29, 1954.

William F. Tompkins, U. S. Atty., Newark, N. J. (by John R. Everitt, Asst. U. S. Atty., South Amboy, Harland F. Leathers, Dept. of Justice, Washington, D. C.) for plaintiff.

Robert R. Daly, Newark, N. J., for defendants.

SMITH, District Judge.

This is a civil action under the Renegotiation Act as amended by the Acts of October 21, 1942, July 1, 1943 and July 14, 1943, 56 Stat. 982; 57 Stat. 347, and 57 Stat. 564, 50 U.S.C.A.Appendix, § 1191. The jurisdiction of the Court is derived from Section 403(c) (2) of the Act, 50 U.S.C.A.Appendix, § 1191(c)(2). The claim of the plaintiff is for "excessive profits" realized by Anthony Failla and Marian Failla, hereinafter identified as the Contractors, during the fiscal year 1943. These profits were determined and eliminated by agreement pursuant to the applicable provisions of the said Act. The essential allegations of the complaint are admitted, but there are set forth in the answer two affirmative defenses hereinafter discussed. The action is before the Court at this time on a motion for summary judgment filed by the plaintiff.

The Contractors, trading as the New Jersey Gear and Manufacturing Company, were parties to certain war contracts which were subject to renegotiation under the applicable provisions of the Act, supra. These contracts were renegotiated by the War Contracts Price Adjustment Board pursuant to Section 403(c)(1) of the Act, 50 U.S.C.A.Appendix, § 1191(c)(1), and it was determined and agreed that the "excessive profits" realized by the Contractors were in the amount of $225,000. This determination was made the subject of a formal Renegotiation Agreement, a copy of which is annexed to the amended complaint, by the terms of which the Contractors agreed to: first, the elimination of the "excessive profits"; and second, the repayment thereof, less the tax credits allowable under the express provisions of Section 3806 of the Internal Revenue Code, 26 U.S.C.A. § 3806. The present action is predicated upon this agreement.

The Contractors, in compliance with paragraph 3 of the agreement, filed with the Bureau of Internal Revenue formal requests for the determination of their individual tax liability for the year in question and the computation of the tax credit allowable under Section 3806 of the Internal Revenue Code, supra. The determination and computation were made and the War Contracts Price Adjustment Board was so advised. The Contractors, Anthony Failla and Marian Failla, were thereupon allowed tax credits in the amount of $63,877.64 and $24,706.25, respectively, as determined and computed by the Bureau of Internal Revenue. The Contractors were then notified by registered mail that the net principal sum of $136,416.11 was due and payable on July 1, 1948. The sum of $26,109.01 was paid by the Contractors and applied by the War Contracts Price Adjustment Board to the reduction of the net principal and accrued interest;

the allocation of this payment to principal and interest is not challenged.

There is no genuine issue as to the material facts thus far recited herein, but the defendants, in their first affirmative defense, allege that the tax credits allowed were less than those allowable under Section 3806 of the Internal Revenue Code, supra. This defense, even if meritorious, is not cognizable in the present action. The defendants obviously seek a redetermination of the tax liability and a recomputation of the allowable tax credit. This relief is not available to the defendants in this action. There is available to the defendants a complete and adequate administrative remedy under the express provisions of Chapter 37 of the Internal Revenue Code, 26 U.S.C.A. § 3770 to 3777, inclusive. See Stow Mfg. Co., Inc. v. Commissioner of Internal Revenue, 2 Cir., 190 F.2d 723, 724 and 725. This remedy has not been exhausted; in fact, there is no allegation in the answer that the remedy has even been pursued.

The renegotiation agreement, by its express terms, and under the provisions of Section 403(c)(4) of the Act, 50 U.S.C.A.Appendix, § 1191(c)(4), was final and conclusive except as to the allowable tax credit. See Stow Mfg. Co. v. Commissioner of Internal Revenue, supra; United States v. Scandia Mfg. Co., D.C., 101 F.Supp. 583, 585. Such agreements have been held to be valid. See United States v. Wunderlich, 342 U.S. 98, 72 S.Ct. 154, 96 L.Ed. 113; United States v. Moorman, 338 U.S. 457, 460 et seq., 70 S.Ct. 288, 94 L.Ed. 256, and the cases therein cited; United States v. Joseph A. Holpuch Co., 328 U.S. 234, 66 S.Ct. 1000, 90 L.Ed. 1192. The finality of the agreement, however, does not foreclose the remedy available to the defendants under the Internal Revenue Code, supra. This remedy is clearly preserved by the provisions of Section 3806 of the Code, supra.

The pertinent subsections of Section 3806, supra, read as follows:

"(a) * * * (1) Excessive profits eliminated for prior taxable year. In the case of a contract with the United States or any agency thereof, * * *, which is made by the taxpayer, if a renegotiation is made in respect of such contract * * * and an amount of excessive profits received * * * under such contract * * * for a taxable year (hereinafter referred to as 'prior taxable year') is eliminated and, * * *, the taxpayer is required to pay or repay to the United States or any agency thereof the amount of excessive profits eliminated * * *, the part of the contract * * * price which was received * * * for the prior taxable year shall be reduced by the amount of excessive profits eliminated.

"(b) * * * (1) General rule. There shall be credited against the amount of excessive profits eliminated the amount by which the tax for the prior taxable year under Chapter I, * * *, is decreased by reason of the application of paragraph (1) of subsection (a); * * *.

"(c). Credit in lieu of other credit or refund. * * * If the amount allowable as a credit under subsection (b) exceeds the amount allowed under such subsection, the *excess shall, for the purposes of the internal-revenue laws relating to credit or refund of tax, be treated as an overpayment* for the prior taxable year which was made at the time the payment, repayment, * * * was made." (Italics by Court.)

These provisions are consistent with and were intended to implement the Renegotiation Act, supra. An overpayment made by a contractor in compliance with a renegotiation agreement and ascribable to a tax credit in an amount less than that allowable is an overpayment of taxes under subsection (c), supra. Such an overpayment is recoverable, upon proof thereof, only in the manner prescribed by the Internal Revenue Code, supra. The overpayment, although in

compliance with an enforceable agreement, is the equivalent of a tax payment illegally assessed and collected. Any doubt is disspelled by the language of subsection (c), supra. The contractor acquires the status of a taxpayer entitled to a refund. The refund is recoverable in the manner prescribed by the Internal Revenue Code, supra.

A comparable situation was presented in the case of Stow Mfg. Co. v. Commissioner of Internal Revenue, supra. The observations of Judge Learned Hand, 190 F.2d on pages 724 and 725, are apposite.

"We agree that it was the purpose of the Renegotiation Act to provide a summary procedure by which a contractor, who was compelled to repay as excess profits part of what he had received under the terms of his contract, may set off against that amount such part of the taxes as had been levied upon the excess. * * * It seems to us in entire accord with the purpose of the statute that the tax credit should be regarded as fixed *only provisionally and tentatively,* leaving to both sides the opportunity to correct any errors that may creep into the inevitably summary negotiations of the settlement. * * * That was not true as to repayment of excess profits: first, the secretary of the department concerned would be familiar with all the circumstances of the work performed; second, the determination of how much of the contract price was 'excess profits' was in any event a subject matter *not really justiciable at all, unlike the question as to what credits were properly 'allowable' upon them when fixed.* Therefore, it is reasonable to suppose that Congress may have meant the contracts to be conclusive as to excess profits, but not conclusive as to 'allowable credits.' Be that as it may, it is indubitable that, certainly as to contractors, Congress did make just that distinction." (Emphasis by the Court.)

After a discussion of the Renegotiation Act, Judge Hand, in explanation of its provisions, continued: "Thus although the contractor *must pay the bal-* *ance fixed in the renegotiation contract,* he nevertheless retains his remedy to obtain the repayment of that part of the excess profit which was denied him because of the too low credit allowed. Against him at any rate the renegotiation settlement is not a final liquidation of taxes, but only provisional and tentative. So far, the statute conforms aptly with the purpose of Congress to *effect speedy settlements,* and yet not cut off the rights of contractors who may be willing to cooperate in that aim. The amount of the 'excess' they must agree to irrevocably; the credit for taxes [is] not irrevocably concluded." (Emphasis by the Court.)

The defendants rely on the case of Stow Mfg. Co. v. Commissioner of Internal Revenue, supra, and urge that their position is supported by the decision. We cannot agree. The decision as we construe it, lends support to our conclusion that there is available to the defendants a complete and adequate administrative remedy under the Internal Revenue Code, supra. The Court, following its discussion of Sections 3770 and 3772 of the Internal Revenue Code, 26 U.S.C.A. §§ 3770 and 3772, stated, 190 F.2d at page 726: "Certainly the second sentence of subsection (c)" of Section 3806, supra, "was at least highly desirable in order to make the remedy clear."

The first affirmative defense, interpreted in the light most favorable to the defendants, asserts the right to a setoff in the amount of the tax credit allegedly allowable. The right may not be enforced, if enforceable at all, where as here, there has been no compliance with the provisions of the Internal Revenue Code, especially Section 3772(a)(1) thereof, 26 U.S.C.A. § 3772(a)(1). The cited section provides: "No suit * * * shall be maintained in any court for the recovery of any internal revenue tax alleged to have been erroneously or illegally assessed * * * until a claim for refund or credit has been duly filed with the Commissioner, according to the provisions of law in that regard, and the regulations of the Secretary established

in pursuance thereof." This requirement is jurisdictional and may not be circumvented by resort to the expedient here adopted by the defendants.

The second affirmative defense, although so designated in the answer, is in fact a counterclaim in which the defendants pray for affirmative relief, to wit, the rescission of the renegotiation agreement on the ground of "mutuality of mistake." The rescission or modification of the agreement is prohibited by subsection (c)(4) of Section 1191 of the Act, supra, except "upon a showing of fraud or malfeasance or a willful misrepresentation of a material fact."

The pertinent provisions of the cited subsection read as follows: "For the purposes of this section the Board may make final or other agreements with a contractor * * * for the elimination of excessive profits and for the discharge of any liability for excessive profits under this section. * * *. Any such agreement shall be conclusive according to its terms; and except upon a showing of fraud or malfeasance or a willful misrepresentation of a material fact, (A) such agreement shall not * * * be reopened as to the matters agreed upon, and shall not be modified by any officer, employee, or agent of the United States, and (B) *Such Agreement * * * Shall Not Be Annulled, Modified, Set Aside, Or Disregarded In Any Suit, Action, Or Proceeding.*" (Emphasis by the Court).

■ This provision is consistent with the generally recognized doctrine of sovereign immunity which prohibits suits against the United States in the absence of a statutory waiver. The subsection, and particularly subdivision (B), was clearly intended to prohibit civil actions which have for their object the rescission or modification of renegotiation contracts. The prohibition is consistent with the obvious purpose of the Act.

■ We are of the opinion, however, that even in the absence of a statutory prohibition the Court is without jurisdiction of the counterclaim. The jurisdiction of the Court under Section 403(c)(2) of the Act, supra, is limited to actions "on behalf of the United States." This is likewise true of the jurisdiction of the Court under Section 1345 of Title 28 U.S.C.A. The statutory jurisdiction of the Court cannot be extended by implication to include counterclaims which seek affirmative relief against the United States. It is well established that sovereign immunity extends not only to original claims but also to counterclaims which demand the entry of an affirmative judgment against the sovereign. The district courts are without jurisdiction of such claims in the absence of a waiver of immunity.

■ The second affirmative defense, regarded as a counterclaim, is defective on its face. It does not contain "a short and plain statement of the grounds upon which the court's jurisdiction depends," the jurisdictional statement required by the Federal Rules of Civil Procedure, Rule 8(a)(1), 28 U. S.C.A. The denomination of the counterclaim as a separate defense does not relieve the defendants of this requirement.

### Conclusions

#### I.

The affirmative defenses must be dismissed for the reason hereinabove stated.

#### II.

■ There is no genuine issue as to any material fact and the plaintiff is therefore entitled to judgment as a matter of law.

### Motion of Defendants

■ The defendants filed a motion to dismiss the amended complaint on the ground that "the record now before the Court discloses that there is no cause of action in favor of the plaintiff and against the defendants." The ground urged in support of the motion is without merit and is therefore dismissed.