**UNITED STATES of America**

v.

**Marian FAILLA, Individually, and The National Newark and Essex Banking Company of Newark and Marian Failla, as Co-Executors Under The Last Will and Testament of Anthony Failla, Deceased, Appellants.**

No. 11395.

United States Court of Appeals, Third Circuit.

Argued Dec. 9, 1954.

Decided Jan. 21, 1955.

Robert R. Daly, Newark, N. J., for appellants.

James C. Pitney, Newark, N. J. (Raymond Del Tufo, Jr., U. S. Atty., District of New Jersey, Newark, N. J., on the brief), for appellee.

Before MARIS, McLAUGHLIN and KALODNER, Circuit Judges.

MARIS, Circuit Judge.

The question presented on this appeal is whether, in an action brought by the United States in the district court for the refund of excessive profits made on a government contract, the district court has jurisdiction to consider a defense that the tax credit allowed by the Government by reason of the return of the excessive profits has been incorrectly computed and should be larger in amount. The question arises from the following facts:

Anthony Failla [1] and Marian Failla, whom we shall call the Contractors, were partners doing business as the New Jersey Gear and Manufacturing Company at Hillside, New Jersey. The Contractors performed certain contracts for the United States Government which were subject to renegotiation under the Renegotiation Act.[2] On April 26, 1948

---

1. After the events here related had occurred Anthony Failla died testate on November 18, 1949. Under his will Marian Failla and The National Newark and Essex Banking Company of Newark were designated as co-executors. The present action is, therefore, against Marian Failla individually and Marian Failla and the bank as co-executors.

2. Section 403 of the Sixth Supplemental National Defense Appropriation Act, 1942, 56 Stat. 245, amended by section 801 of the Revenue Act of 1942, 56 Stat. 982, and by section 701 of the Revenue Act of 1943, 58 Stat. 78. 50 U.S.C.A.Appendix, § 1191.

the Contractors executed a renegotiation agreement with the RFC Price Adjustment Board acting on behalf of the War Contracts Price Adjustment Board in which it was stipulated that for the fiscal year ending September 30, 1943 excessive profits in the sum of $225,000 were realized and should be eliminated. Each Contractor had included his proportionate share of the excessive profits in his income in computing his federal income tax for the taxable year here involved. Article 3 of the renegotiation agreement provided as follows:

"3. * * * Each of such partners has applied or will promptly apply for a computation by the Bureau of Internal Revenue, based upon the assessments made to the date of such computation, of the amount by which his taxes for such taxable year under Chapter 1 of the Internal Revenue Code are decreased by reason of the application of Section 3806 of the Internal Revenue Code. The aggregate of the amounts, if any, so computed will be allowed as a credit against the amount of profits agreed in Article 1 to be eliminated."

Article 4 provided that the excessive profits of $225,000 should be repaid to the Government "(a) By the application on account of such payment of the aggregate amount of the tax credits, if any, to which the Contractor may be entitled, as stated in Article 3 hereof; and (b) By the delivery of * * * checks * * * in an aggregate amount equal to the balance of said $225,000 remaining due upon giving effect to the application of such tax credits, if any, * * *."

The Contractors filed formal requests with the Internal Revenue Agent in charge at Newark for a computation of the tax credit as defined by section 3806 of the Internal Revenue Code. Such computations were made, the tax credit in the case of Anthony Failla being $63,877.64 and in the case of Marian Failla $24,706.25, a total credit of $88,583.89. On the basis of these credits

the balance of excessive profits to be repaid was $136,416.11. On June 11, 1948 the RFC Price Adjustment Board notified the Contractors that this balance was payable on July 1, 1948. The Contractors, however, disagreed with the computation of tax credits made by the Bureau of Internal Revenue, asserting that they were too small and that the credits, properly computed, should total $198,890.99, leaving only $26,109.01 as the balance of excessive profits repayable to the United States. They accordingly paid $26,194.85, being $26,109.01 plus interest of $85.84, on September 20, 1948, which was applied by the Board against the amount claimed to be due from them. Subsequent conferences with the Internal Revenue authorities seeking a recomputation of the tax credits came to nothing.

On March 31, 1950 the United States brought the present action in the District Court for the District of New Jersey against the defendants to recover the balance of the excessive profits realized by the Contractors during the fiscal year 1943. The defendants denied that anything was due and set up two affirmative defenses, first, that the Contractors were not given tax credit in accordance with the terms of paragraph 3 of the contract and, second, that the contract was void for mutual mistake in respect to the tax credit. The United States filed a motion asking the court to strike the first and second defenses and to enter summary judgment in its favor. The defendants filed a cross-motion seeking dismissal of the complaint on the ground that on the record before the court the United States had no cause of action.

The district court found that on the pleadings no material fact was in dispute, that the defendants were seeking a redetermination of the tax credit which was unavailable to them in this action and that the second defense was in fact a counter-claim in which the defendants sought rescission of the agreement, affirmative relief against the United States which was not within the court's

jurisdiction. Accordingly, the district court dismissed the affirmative defenses, denied the defendants' motion to dismiss the complaint, and entered summary judgment in favor of the United States in the sum of $112,037.65, together with interest on $110,307.10 from September 21, 1948. 120 F.Supp. 797. This appeal followed.

On this appeal the only error urged is the action of the district court in dismissing the first affirmative defense and entering summary judgment without reviewing the correctness of the computation by the Bureau of Internal Revenue of the Contractors' tax credits. The defendants assert that the renegotiation agreement expressly provides for a tax credit to be computed "under Chapter 1 of the Internal Revenue Code," and that the correctness of the computation is a matter for judicial determination in a suit to recover the net amount due the Government under the agreement.

The renegotiation agreement, however, did not determine or fix the amount of the tax credit which was to be applied against the excessive profits as it did in respect of the excessive profits themselves. On the contrary it expressly stated that the computation of the tax credit was to be made by the Bureau of Internal Revenue at the request of the Contractors. Thus the agreement, which was made by the Contractors with the governmental agency empowered to renegotiate their excessive profits and which dealt specifically with the amount of the profits to be eliminated, delegated to another and more appropriate governmental agency, the Bureau of Internal Revenue, the task of determining the amount of decrease in their income taxes with which the Contractors were to be credited in the light of the elimination of the excessive profits from their taxable income for the year in question.

By the express terms of the agreement the computation was to be made by the application of section 3806 of the Internal Revenue Code of 1939, 26 U.S.C. That section in so far as pertinent here is as follows:

"(a) Reduction for prior taxable year

"(1) Excessive profits eliminated for prior taxable year. In the case of a contract with the United States or any agency thereof, or any subcontract thereunder, which is made by the taxpayer, if a renegotiation is made in respect of such contract or subcontract and an amount of excessive profits received or accrued under such contract or subcontract for a taxable year (hereinafter referred to as 'prior taxable year') is eliminated and, in a taxable year ending after December 31, 1941, the taxpayer is required to pay or repay to the United States or any agency thereof the amount of excessive profits eliminated or the amount of excessive profits eliminated is applied as an offset against other amounts due the taxpayer, the part of the contract or subcontract price which was received or was accrued for the prior taxable year shall be reduced by the amount of excessive profits eliminated.  *  *  *

*   *   *   *   *   *

"(b) Credit against repayment on account of renegotiation or allowance

"(1) General rule. There shall be credited against the amount of excessive profits eliminated the amount by which the tax for the prior taxable year under Chapter 1, Chapter 2A, Chapter 2B, Chapter 2D, and Chapter 2E, is decreased by reason of the application of paragraph (1) of subsection (a);  *  *.

*   *   *   *   *   *

"(c) Credit in lieu of other credit or refund. If a credit is allowed under subsection (b) with respect to a prior taxable year no other credit or refund under the internal-revenue laws founded on the application of subsection (a) shall be made on account of the amount allowed with respect to such taxable year. If the amount allowable as a credit under subsection (b) exceeds the amount.

allowed under such subsection, the excess shall, for the purposes of the internal-revenue laws relating to credit or refund of tax, be treated as an overpayment for the prior taxable year which was made at the time the payment, repayment, or offset was made."

We read these provisions of section 3806 as did Judge Learned Hand speaking for the Second Circuit in Stow Mfg. Co. v. Commissioner of Internal Revenue, 1951, 190 F.2d 723, certiorari denied 342 U.S. 904, 72 S.Ct. 295, 96 L.Ed. 677, to mean that the tax credit is to be computed by the Bureau of Internal Revenue under subsection (b) and that if the amount actually allowed by the Bureau as such credit is less than the amount properly allowable under that subsection the tax previously paid by the taxpayer for the taxable year involved shall be regarded as overpaid, to the extent of the difference, and shall be subject to refund as such. This means that the defendants, after they have paid the judgment here appealed from, may seek a refund from the Bureau of Internal Revenue under section 3770(a) of the Internal Revenue Code of 1939 [3] of so much of the payment as represents the additional tax credit which they assert has been erroneously denied them and if the claim is denied, or not acted on within six months, may sue to recover back the amount thus claimed.[4]

The defendants urge, however, that they are entitled to litigate the proper amount of their tax credit by way of an affirmative defense in this suit, as they have sought to do, and that the district court erred in holding that it had no power to consider such a defense in this proceeding. We do not agree. On the contrary we think that section 3772(a) of the Internal Revenue Code of 1939,[5] which requires the filing of a claim for refund as a prerequisite to a suit for the recovery of an erroneous or excessive tax, squarely bars the consideration by the court of such a defense in this suit. For a tax credit allowed under the Renegotiation Act is the legal equivalent of a tax refund to the contractor-taxpayer.[6] Applying it as a set-off on his indebtedness to the United States instead of paying it to him in cash merely avoids the circumlocution of cross payments. Here the defendants have not exhausted their administrative remedy by filing the claim for refund which section 3772(a) requires as a prerequisite for judicial consideration of their contention. This being so we need not consider whether if the administrative remedy had been exhausted the defendants would have been entitled to assert the erroneous computation of the tax credit as an affirmative defense in this suit.

Vokal v. United States, 9 Cir., 1949, 177 F.2d 619, which is relied upon by the defendants, we regard as distinguishable on its facts. The issue which we regard as decisive here was not discussed in that case. We conclude that the district court did not err in dismissing the defense as being beyond its power to consider.

The judgment of the district court will be affirmed.

3. Now incorporated in Internal Revenue Code of 1954, § 6402.

4. Internal Revenue Code of 1954, § 7422 (a); 28 U.S.C. § 1346(a) (1).

5. Now incorporated in Internal Revenue Code of 1954, §§ 6532(a), 7422(a).

6. Universal Oil Products Co. v. Campbell, 7 Cir., 1950, 181 F.2d 451, 478, certiorari denied 340 U.S. 850, 71 S.Ct. 78, 95 L. Ed. 623.