Marian **FAILLA**, individually, and the National Newark and Essex Banking Company of Newark and Marian Failla, as Co-Executors under the Last Will and Testament of Anthony Failla, deceased, Plaintiffs,

v.

UNITED STATES of America, and the Reconstruction Finance Corporation, an agency of the United States of America, Defendants.

Civ. No. 935.

United States District Court
D. New Jersey.
Nov. 18, 1960.

Robert R. Daly, Newark, N. J., for plaintiffs.

Charles K. Rice, Asst. Atty. Gen., James P. Garland, Rufus E. Stetson, Jr., Lyle M. Turner, Dept. of Justice, Washington, D. C., Chester A. Weidenburner, U. S. Atty., Dist. of New Jersey, Newark, N. J., for defendants.

WILLIAM F. SMITH, Chief Judge.

This is an action to recover internal revenue taxes, to wit, the income and victory taxes for the fiscal year 1943, alleged to have been erroneously assessed and collected. The jurisdiction of the Court is invoked under Section 1346(a) (1) of Title 28 U.S.C.A., as amended. The only issue presented for determination is one of law.

### Facts.

The plaintiff Marian Failla and her deceased husband Anthony Failla, hereinafter identified as the taxpayers, had been partners trading as the New Jersey Gear and Manufacturing Company. The deceased husband is here represented by the executors of his estate. The taxpayers were parties to certain war contracts

which were subject to renegotiation under the applicable provisions of the Renegotiation Act, as amended, 50 U.S.C.A. Appendix § 1191.

The business of the partnership was operated on a fiscal year basis during the years in question, to wit, 1942 and 1943; the former ended on September 30, 1943 and the latter ended on September 30, 1944. The partnership return of income for each of the said fiscal years was prepared accordingly. The tax liability of each of the taxpayers for each of the years in question was computed on a fiscal year basis; the fiscal year 1942 ended on February 28, 1943 and the fiscal year 1943 ended on February 29, 1944.

It appears from the individual return of the taxpayer Anthony Failla that his income tax liability for the fiscal year 1942 (determined without regard to the pertinent provision of the Current Tax Payment Act of 1943, 26 U.S.C.A. § 1621 et seq., infra) was $113,022.27 and that his income tax liability for the fiscal year 1943 (similarly determined) was $133,962.53. It further appears that the aggregate tax liability for the years in question was computed under the formula established by the Current Tax Payment Act of 1943; the taxpayer eliminated, under the "forgiveness feature" of Section 6 of the Act, 26 U.S.C.A. § 1622 note, all but twenty five per cent of his tax liability for the fiscal year 1942. The aggregate tax as thus computed and paid was $162,218.10.

It appears from the individual return of the taxpayer Marian Failla that her income tax liability for the fiscal year 1942 (determined without regard to the pertinent provision of the Current Tax Payment Act of 1943) was $111,957.85 and that her income tax liability for the fiscal year 1943 (similarly determined) was $140,011.92. It further appears that the aggregate tax liability for the years in question was computed under the formula established by the Current Tax Payment Act of 1943; the taxpayer eliminated, under the "forgiveness feature" of Section 6 of the Act, all but twenty five per cent of her tax liability for the fiscal year 1942. The aggregate tax as thus computed and paid was $168,001.38.

The war contracts were renegotiated by the War Contracts Price Adjustment Board pursuant to the applicable provisions of the Renegotiation Act, supra, and it was determined and agreed that "excessive profits" in the amount of $225,000 were realized by the partnership during its fiscal year ending September 30, 1943. This determination was made the subject of a formal Renegotiation Agreement dated April 26, 1948, by the terms of which the taxpayers agreed to the elimination of the "excessive profits" and the repayment thereof less the tax credits allowable under the provisions of Section 3806 of the Internal Revenue Code, 1939, 26 U.S. C.A. § 3806. It was further agreed by each of the taxpayers that the "proportionate share of the [excess] profits" was included in his and her "income" for the taxable year 1943.

The apposite clause of the formal agreement reads as follows:

"3. Tax Credit under Section 3806 of the Internal Revenue Code.

"Each of the partners comprising the Contractor represents that his proportionate share of the profits, the amount of which is agreed in Article 1 hereof to be eliminated, was included in his income for his taxable year in which said fiscal year ended in computing his total tax in his Federal income tax return for said taxable year. Each Of Such Partners Has Applied Or Will Promptly Apply For A Computation By The Bureau Of Internal Revenue, based upon the assessments made to the date of such computation, Of The Amount By Which His Taxes For Such Taxable Year Under Chapter 1 Of The Internal Revenue Code Are Decreased By Reason Of The Application Of Section 3806 Of The Internal Revenue Code. The aggregate of the amounts, if any, so computed will be allowed as a

credit against the amount of profits agreed in Article 1 to be eliminated." (Emphasis by the Court.)

The terms of this clause conform to the pertinent provisions of the Renegotiation Act, supra, § 1191(c) (2) and Section 3806 of the Internal Revenue Code, supra.

The computation of the tax credit allowable to each of the taxpayers under Section 3806 of the Internal Revenue Code, supra, was made by the Bureau of Internal Revenue upon formal requests. The computed tax credit allowable to each of the taxpayers, Anthony Failla and Marian Failla, was in the amount of $63,877.64 and $24,706.25, respectively, a total of $88,583.89. The taxpayers were thereupon notified that the balance of excessive profits in the amount of $136,416.11 was due and payable on July 1, 1948. The computation was disputed by the taxpayers who claimed an allowable credit in the total amount of $198,890.99. They accordingly paid $26,194.85, representing principal in the amount of $26,109.01 and interest in the amount of $85.84, and resisted payment of the balance.

Thereafter the United States of America brought an action on the Renegotiation Agreement to recover the balance of excessive profits allegedly due thereunder. The present plaintiffs denied liability and as an affirmative defense to the action asserted a right to a setoff in the amount of the tax credit claimed by them as allowable under the express terms of the agreement. The action came before this Court on a motion for summary judgment filed by the United States of America. The motion was granted and judgment was entered. United States v. Failla, D.C., 120 F.Supp. 797, affirmed 3 Cir., 219 F.2d 212. The judgment together with interest was paid and thereafter the plaintiffs filed a claim for a refund of the internal revenue taxes alleged to have been erroneously assessed and collected. This claim was denied and the present action followed.

Discussion.

The pertinent subsections of Section 3806, supra, read as follows:

"(a) * * * (1) Excessive profits eliminated for prior taxable year. In the case of a contract with the United States or any agency thereof, * * * which is made by the taxpayer, if a renegotiation is made in respect of such contract * * * and an amount of excessive profits received * * * under such contract * * * for a taxable year (hereinafter referred to as 'prior taxable year') is eliminated and, in a taxable year ending after December 31, 1941, the taxpayer is required to pay or repay to the United States or any agency thereof the amount of excessive profits eliminated * * *, the part of the contract * * * price which was received * * * for the prior taxable year shall be reduced by the amount of excessive profits eliminated. * * *

"(b) * * * (1) General rule. There shall be credited against the amount of excessive profits eliminated the amount by which the tax for the prior taxable year under Chapter 1, * * * is decreased by reason of the application of paragraph (1) of subsection (a); * *."

These provisions are consistent with and were intended to implement the Renegotiation Act, supra.

The Renegotiation Agreement, by its express terms, and under the provisions of Section 403(c) (4) of the Renegotiation Act, supra, 1191(c) (4), was final and conclusive except as to the allowable tax credit. The computation of the tax credit was to be made by the Bureau of Internal Revenue and by the application of the formula prescribed by Section 3806 of the Internal Revenue Code, 1939, supra. United States v. Failla, 3 Cir., 219 F.2d 212, 214 et seq.; Stow Mfg. Co. v. Commissioner of Internal Revenue, 2 Cir., 190 F.2d 723, 725 et seq. The tax credit thus computed was allowable as a credit against the taxpayers' indebted-

ness to the United States of America. Ibid.

This was the construction given the Renegotiation Agreement by the United States Court of Appeals in the earlier case. United States v. Failla, 3 Cir., 219 F.2d 212. It was therein held, at page 214: "The renegotiation agreement, however, *did not determine or fix the amount of the tax credit which was to be applied against the excessive profits* as it did in respect of the excessive profits themselves. On the contrary it expressly stated *that the computation of the tax credit was to be made by the Bureau of Internal Revenue* at the request of the Contractors. Thus the agreement, which was made by the Contractors with the governmental agency empowered to renegotiate their excessive profits and which dealt specifically with the amount of the profits to be eliminated, *delegated to another and more appropriate governmental agency, the Bureau of Internal Revenue, the task of determining the amount of decrease in their income taxes* with which the Contractors were to be credited in the light of the elimination of the excessive profits from their taxable income for the year in question." (Emphasis by the Court.)

The elimination of the excessive profits made necessary the recomputation of the tax liability of each taxpayer for the year in question. It is admitted by the United States of America that the recomputation of the said tax liability was made pursuant to Section 3806, supra, and "was based in part" on the application of Section 6 of the Current Tax Payment Act of 1943. 26 U.S.C.A. (Internal Revenue Acts, Beginning 1940) pages 406 et seq. The actual tax credits allowed each of the taxpayers was thus determined.

■ The taxpayers here contend that the recomputation thus made was erroneous. It is argued that the amount of allowable tax credits should have been determined without regard to the Current Tax Payment Act of 1943. The argument is predicated upon a narrow and strained construction of the Renegotiation Agreement. Although the taxpayers availed themselves of the "forgiveness feature" of the Act in the preparation of their returns for the fiscal year 1943, they now protest its application in the determination of their allowable tax credits. We are of the opinion that the contention is without merit.

■ The general purpose of the Current Tax Payment Act of 1943 was to place the individual taxpayer on a current basis for the taxable years after 1942. Section 6 thereof by its express language was applicable to "the tax imposed by Chapter 1 of the Internal Revenue Code upon any individual * * *." The specific purpose of the Section was to afford the individual taxpayer a measure of relief from the burden of paying in one year the accrued taxes of two years, to wit, 1942 and 1943. This was achieved by the application of the "forgiveness feature" therein contained. While the provisions of the Section did not amend the Internal Revenue Code, they prescribed the method to be applied in the computation of the tax imposed by Chapter 1 thereof; the Section was applicable, of course, only to the specific tax periods 1942–1943.

■ We are of the opinion that the correct recomputation of the tax liability for the year 1943 and the determination of the tax credits allowable under Section 3806, supra, required the application of Section 6 of the Current Tax Payment Act of 1943. It seems obvious that where, as here, the taxpayers had availed themselves of the advantageous provisions of the said Act, a determination of tax credits allowable under Section 3806, supra, without regard to the said provisions, would have resulted in a windfall. The purpose of Section 3806, supra, was to permit an equitable adjustment of the tax liability upon the repayment of excessive profits; its purpose was not to allow a windfall.

## Conclusions.

### I.

The tax credits allowable under Section 3806 of the Internal Revenue Code, supra, were correctly determined. The

complaint will be dismissed and judgment may be entered accordingly.

## II.

The only issue raised by the affirmative defense interposed by the United States of America is moot.

## III.

The Reconstruction Finance Corporation is not a proper party to this action.