## CALDWELL SUGARS, Inc., v. UNITED STATES.

### No. 45677.

Court of Claims.

April 3, 1944.

Carl J. Batter, of Washington, D. C., for plaintiff.

J. A. Rees, of Washington, D. C., and Samuel O. Clark, Jr., Asst. Atty. Gen. (Fred K. Dyar, of Washington, D. C., on the brief), for defendant.

Before WHALEY, Chief Justice, and LITTLETON, WHITAKER, JONES, and MADDEN, Judges.

MADDEN, Judge.

The plaintiff sues to recover $22,392.44 paid as unjust enrichment taxes under Title III of the Revenue Act of 1936, 49 Stat. 1734–1739, 26 U.S.C.A. Int.Rev.Code, §§ 700–705, for its fiscal year ending February 28, 1936. The history of its claim is as follows. The Agricultural Adjustment Act as amended, 48 Stat. 670, imposed a processing tax on the first domestic processing after June 7, 1934, of sugar cane into direct-consumption sugar. The plaintiff was engaged in that kind of processing, and for the first processing season, that is, until April 30, 1935, it paid the processing tax. After the seasonal shut-down it resumed processing in October 1935, but did not pay the tax on that processing.

On January 6, 1936, the Supreme Court of the United States, in the case of United States v. Butler, 297 U.S. 1, 56 S.Ct. 312, 80 L.Ed. 477, 102 A.L.R. 914, held that the taxing provisions of the Agricultural Adjustment Act were unconstitutional. The taxes which would have been due, but which the plaintiff did not pay, on the 65,102¼ one hundred pound units of sugar which it processed from October 1935 to January 6, 1936, amounted to $34,243.77.

Because many processors had shifted the tax by adding it to the price of sugar sold, or by other means, Congress thought that a good deal of unjust enrichment had resulted from the imposition and invalidation of the processing tax, so it, in Title III, Section 501(a) (1) of the Revenue Act of 1936, 49 Stat. 1734, imposed an 80% tax on abnormal income derived from the sale of commodities to which the processing tax had been applicable, with a limitation that the new tax should not exceed the unpaid processing tax. Since the taxpayer's net income and excess profits had been enlarged by his escape from the processing tax, and his taxes on income and profits had been accordingly increased, he was given credit for those increases, against the unjust enrichment tax. Section 502. The plaintiff filed a return on this tax on May 15, 1937, and, after the correction by the Commissioner of Internal Revenue of some of the plaintiff's computations, paid $22,392.44 of tax and interest. It seeks in this suit to recover that amount.

The unjust enrichment tax statute provided in Section 501(e) a method of determining, prima facie, whether a processor had shifted the burden of the processing tax to others, and thereby enriched himself. The method was to compare his profit, per unit of the processed article, during the period that the tax was in effect, with his profit during a period of years before that period. The application of that method to the plaintiff's situation showed a profit of $53,558.99 in excess of normal. But since the unjust enrichment tax was limited, at the outside, to the amount of the processing tax unpaid, which as we have said, was $34,243.77, the latter sum, less the credits for enlarged income and excess profits taxes, was the presumptive amount of the unjust enrichment tax.

Section 501(i) provided that the presumptive amount of the taxpayer's unjust enrichment, arrived at by the arbitrary computation prescribed by the statute, could be rebutted, by either the taxpayer or the Government,

" * * * by proof of the actual extent to which the taxpayer shifted to others the burden of the Federal excise tax [the processing tax]. Such proof may include, but shall not be limited to:

"(1) Proof that the change or lack of change in the margin was due to changes in factors other than the tax. * * *"

The plaintiff in this case has undertaken the burden of proving that its abnormal profits for the period of the processing tax were due to "changes in factors other than the tax." The facts are stipulated. They show that on the date that the processing tax became effective, June 8, 1934, there was a universal increase in the selling price of refined sugar, standard quality, of 55 cents per 100 pounds, which, less the customary 2% discount for cash, was a net increase of 53.9 cents; that the processing tax on such sugar was 53.5 cents; that the tax on the plaintiff's sugar, which was below standard in quality was 52.6 cents; that the plaintiff's sugar was sold during, as well as before and after, the processing tax period, at a differential of 20 to 45 cents below the current price quoted by the American Sugar Refining Company, a processor of standard grade sugar; that the plaintiff billed the processing tax separately to some purchasers from it, and received $3,709 in payment of those bills, which amount was paid to the Government and is not in issue in this case; that the plaintiff, during the period of the processing tax, effected sav-

ings of $5,685 in the cost of processing, $5,961.74 in the decreased cost of cane, not caused by shifting the tax backward to the producer, but by producing cane more cheaply from its own plantations, and $10,-341.67 in the increased yield of sugar from the amount of cane used; that the sum of these three items of savings is $21,988.-41; that when this sum is subtracted from $53,558.99, the amount of the plaintiff's abnormal profit for the tax period, it leaves $31,570.58, to be accounted for by reason of increases in the selling price of sugar during the tax period over the prices in the base or test period; that this amount is $2,673.19 less than $34,243.77, the amount of the processing tax imposed but not paid; that the selling price of sugar fluctuated considerably before the imposition and after the invalidation of the tax, principally in response to the apparent prospects, from time to time, of the Government's making some move to stabilize the sugar market.

On these facts, the plaintiff has not rebutted the statutory presumption that it shifted the burden of the tax to its purchasers, except as to $2,673.19. After proving its savings of $21,988.41 resulting from conditions not related to the price at which it sold its sugar, it still had $31,-570.58 of the abnormal profits attributable to selling its sugar on a larger margin than normal above the cost of production. The plaintiff has not explained why it would have been able to sell on this larger margin if the price of sugar had not been increased to the purchaser at the time of and because of the processing tax. It has not, therefore, sustained its burden of proof except as to $2,673.19.

The Government urges that all of the plaintiff's claim is barred by its failure to make proper claims for refund. We now consider the steps which the plaintiff took to recover its tax, before it filed its suit in this court.

It made its return of unjust enrichment tax on May 15, 1937. It filed a claim for refund on June 30, 1937, asserting the unconstitutionality of the tax. This claim was disallowed by registered letter on August 11, 1938. It filed a second claim for refund on December 29, 1939. This claim was timely, being within three years from the time the return was filed. Section 322(b) (1) of the Revenue Act of 1936, 26 U.S.C.A. Int.Rev.Code, § 322(b) (1). It repeated the assertion of unconstitutionality, and stated in a second paragraph

"2. Claimant did not pass the tax on to others, directly or indirectly; but bore the burden thereof; and, data in support of this fact is in course of preparation and will be submitted in due course."

What the plaintiff evidently meant was that it had not passed the processing tax on to others, and that therefore it did not owe the unjust enrichment tax which it had paid and was seeking to get back. In spite of the ineptness of its statement, which is substantially repeated in paragraph six of its petition, we suppose the taxing authorities understood, as we understand, what the plaintiff was trying to say. The plaintiff submitted no data in support of this claim for refund, though it said in its claim that it would do so.

Section 3772 of the Internal Revenue Code, 26 U.S.C.A. Int.Rev.Code, § 3772, provides that no suit in court for the recovery of internal revenue taxes shall be maintained until "a claim for refund or credit has been duly filed with the Commissioner, according to the provisions of law in that regard, and the regulations of the Secretary established in pursuance thereof."

Treasury Regulations 95, relative to the tax on unjust enrichment, make applicable, inter alia, Supplement O to Treasury Regulations 94, which contains in Article 322-3 the following requirement:

"The claim must set forth in detail and under oath each ground upon which a refund is claimed, and facts sufficient to apprise the Commissioner of the exact basis thereof. No refund or credit will be allowed after the expiration of the statutory period of limitation applicable to the filing of a claim therefor except upon one or more of the grounds set forth in a claim filed prior to the expiration of such period. A claim which does not comply with this paragraph will not be considered for any purpose as a claim for refund. * * *"

The Government seems to contend that the claim of December 29, 1939, was a nullity because it did not set forth "facts sufficient to apprise the Commissioner of the exact basis thereof." Therefore, the Government contends, the only valid claim for refund was the one filed on June 30, 1937, and disallowed on August 11, 1938, hence this suit, begun on May 5, 1942, was too late, since it was begun more than two

552

years after the rejection of the claim. Section 3772(a) (2) of the Internal Revenue Code, 26 U.S.C.A. Int.Rev.Code, § 3772(a) (2). If we agreed with the Government that the first claim was the only effective claim filed, this suit would fail on the merits, as well as by lapse of time, since the only ground asserted in the first claim was the unconstitutionality of the unjust enrichment tax, which ground is not relied on in this suit.

We think, with some doubt, that the plaintiff's second claim for refund was a claim, in the sense that the plaintiff had a right to sue within two years after its rejection on May 10, 1940. But, because of what we are about to say, the plaintiff's position is not improved by our conclusion on that point. As we have said, the plaintiff did not furnish to the Commissioner of Internal Revenue any evidence whatever tending to show that the tax should be refunded. If the plaintiff may, after the Commissioner's correct and inevitable rejection of its claim on the basis of the showing made to the Commissioner, present evidence to the court which it withheld from the Commissioner, and win its suit in court, the purpose of the statutory scheme requiring that claims for refund be first made to the Commissioner is frustrated. The Government would save interest if it permitted the taxpayer to sue in court without the gesture of filing with the Commissioner an unsupported claim calling for rejection. The obvious purpose of the statutory requirement of filing claims for refund with the Commissioner as a condition precedent to suit is to "afford an opportunity for administrative adjustment without suit." Samara v. United States, 2 Cir., 129 F.2d 594, 597. No such opportunity was afforded by what the plaintiff filed with the Commissioner, and the condition precedent was not fulfilled. The plaintiff may not, therefore, recover even that portion of the tax which is shown, by its evidence here presented, not to have been owed by it.

While preparing the stipulation in this case, the plaintiff discovered, and the defendant concedes, that it had overpaid its tax by $1,266.08 because in its return it had overstated the quantity of sugar on which a processing tax had been imposed but not paid. Recovery of this sum is barred, of course, by the fact that no claim for refund has ever been made to the Commissioner setting up this ground for refund. Section 3772, Internal Revenue Code, 26 U.S.C.A. Int.Rev.Code, § 3772. United States v. Felt & Tarrant Mfg. Co., 283 U.S. 269, 51 S.Ct. 376, 75 L.Ed. 1025.

The plaintiff is not entitled to recover. Its petition is therefore dismissed.

It is so ordered.

WHITAKER and LITTLETON, Judges concur.

JONES, Judge, and WHALEY, Chief Justice, took no part in the decision of this case.