SPARTON CORPORATION, Formerly the Sparks-Withington Company

v.

UNITED STATES.

No. 492–56.

United States Court of Claims.
June 8, 1960.

Frederick R. Tansill, Washington, D. C., for plaintiff. Louis S. Peirce and Henderson, Quail, Schneider & Peirce, Cleveland, Ohio, were on the brief.

H. S. Fessenden, Washington, D. C., with whom was Charles K. Rice, Asst. Atty. Gen., for the defendant. James P. Garland and Lyle M. Turner, Washington, D. C., were on the brief.

MADDEN, Judge.

The plaintiff sues for the recovery of income taxes and excess profits taxes paid by it for its fiscal year 1945. The Government says that the ground on which the suit is based is not the ground on which the plaintiff's claims for refund were based, and that therefore the statutory prerequisite to suit, prescribed by section 3772 of the Internal Revenue Code of 1939, 26 U.S.C.A. § 3772, and by section 29.322–3 of Treasury Regulations 111 was not satisfied. The Government also says that count II of the plaintiff's petition, added in 1959 by amendment to the petition, was not a permissible amendment of the petition but was a statement of a different cause of action already barred by the statute of limitations.

The plaintiff's tax affairs for the year 1945, and the right to claim refunds for that year, were still open, by reason of valid extensions, in 1952. On December 30, 1952, the plaintiff filed such claims for 1945, one for a refund of income tax and another for a refund of excess profits tax. The income tax claim specifically based the right to the refund upon the ground that the plaintiff had, in 1946, *paid* an excess profits tax for the year 1945, which it should have taken, but had failed to take, as a deduction from its 1946 income; that if it had taken the deduction, that would have increased its operating loss for 1946, and given it a carryback to its year 1944 sufficient to wipe out its taxes for 1944 and leave a balance sufficient to reduce its 1945 income tax by $243,747.89.

The plaintiff's claim for refund of excess profits taxes for 1945, while not so specific in its language, was, when considered in its relation to the income tax claim filed at the same time, based on the same ground.

The theory of these claims for refund was the theory approved by this court in the case of Olympic Radio & Television,

Inc. v. United States, 108 F.Supp. 109, 110 F.Supp. 600, 124 Ct.Cl. 33, decided November 4, 1952, reversed, 349 U.S. 232, 75 S.Ct. 733, 99 L.Ed. 1024, May 23, 1955.

The Government did not agree with the plaintiff's theory, and the claims for refund were rejected on November 24, 1954. On May 23, 1955, the Supreme Court of the United States reversed this court's decision in Olympic Radio. On the same day the Supreme Court decided the case of Lewyt Corporation v. Commissioner, 349 U.S. 237, 75 S.Ct. 736, 99 L.Ed. 1029. One of the points decided in Lewyt was the point referred to above, which was also decided in Olympic. Another point decided in Lewyt involved section 122(d)(6) of the Internal Revenue Code of 1939, 26 U.S.C. (1946 ed.) § 122 (d)(6). Section 122(b)(1) of the 1939 Code permitted a net operating loss carry-back to the year first preceding the year in which the loss was incurred in the amount of the loss less net income for the second preceding taxable year, such net income being computed with certain deductions. One of these deductions was defined by section 122(d)(6) as the amount of excess profits taxes "paid or accrued" by the taxpayer in that taxable year. Lewyt established that, for an accrual-basis taxpayer, excess profits taxes "accrued" means the amount of such taxes reported in the taxpayer's return for that year, rather than the amount finally paid, after adjustments, renegotiation tax credits and carry-backs have been considered.

After the Lewyt decision the plaintiff, on November 22, 1955, sought the "reinstatement" of its rejected claims for refund for 1945, saying that in view of the decision in Lewyt favorable to the claims, the claims should be reconsidered. After some correspondence, the plaintiff presented a written explanation as to why the two claims for 1945 should be reinstated and allowed, and as to the pertinency of the Lewyt decision. The claims were "reinstated", but on April 10, 1956, the District Director advised the plaintiff that a thorough study of the

claims and other pertinent data disclosed that they related to excess profits taxes "paid" and, therefore, the Supreme Court's decision in Lewyt was adverse to the claims. In May, 1956 the plaintiff was advised by the District Director that a review of the claims disclosed no basis for a refund, and that the plaintiff might file a protest which would carry the question to higher authority in the Revenue Service. The plaintiff filed a protest, there were conferences with higher authority, and the claims were again rejected on September 27, 1956. The instant suit was filed on November 20, 1956.

The theory of the instant suit is that the plaintiff's excess profits tax liability for the fiscal year ended June 30, 1944, as computed on the basis of facts known on that date, was $4,147,993.56; that if this amount, rather than the amount of the excess profits tax ultimately paid for 1944, had been subtracted from the net income for that year ($2,489,118.66), in order to determine, pursuant to Section 122(b), the amount of 1946 net operating loss which was not usable as a carry-back to 1945, there would have been nothing by which to reduce the net operating loss carry-back from 1946; and that, therefore, the entire amount of the 1946 net operating loss may be used as a carry-back in 1945. The propriety of taking the figure which the 1944 return showed as "accrued", rather than the much smaller figure representing the 1944 excess profits taxes which the plaintiff ultimately paid, after adjustments which the record does not explain, is established by the second point in the Supreme Court's opinion in Lewyt.

The theory of the claim for refund was, as we have seen, that the plaintiff was entitled to include in its 1946 net operating loss the amount of excess profits taxes paid, rather than of those accrued, in that year, so that it should have reported a much larger 1946 loss and have been entitled to a much larger carry-back. It did not claim the larger deduction from 1944 net income under section 122 (d) (6) with which Lewyt dealt, but urged that it had a net operating loss

in 1946 which was sufficiently large to result in a carry-back to 1945 even when the amount of 1944 net income without the larger deduction was subtracted from it.

■ Where there is as fundamental a difference in theory, between the claim for refund and the suit, as is shown in this case, we have serious doubts as to whether section 3772 and the pertinent regulations have been complied with. However, our decision in Continental Foundry and Machine Co. v. United States, 159 F.Supp. 608, 141 Ct.Cl. 604, is squarely in point, and our decisions in National Forge & Ordnance Co. v. United States, 151 F.Supp. 937, 139 Ct.Cl. 204 and 222, and H. B. Zachry Company v. United States, Ct.Cl., 168 F.Supp. 777, decided December 3, 1958, dealt with closely comparable problems. Those cases were decided in favor of the taxpayers. We adhere to the conclusions there arrived at.

The Government, as we have said, urges that the plaintiff's amendment of its petition, by leave of court, in 1959, should not have been permitted because, the Government says, the claim introduced by the amendment was new matter, and the statute of limitations, section 3772(a) of the Internal Revenue Code of 1939, had run against it. Since we rendered no opinion at the time we granted the plaintiff's motion to amend the petition, we will now discuss the problem.

The plaintiff, in support of its motion to amend, cited our Rule 18(c), 28 U.S.C.A., which says:

"Whenever the claim * * * asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth * * * in the original pleading, the amendment relates back to the date of the original pleading."

The original petition, filed in time, alleged that the plaintiff had had, in its tax year 1946, a net operating loss of $506,146.43; that in 1944, the second taxable year preceding 1946 it had had a net income of $2,489,118.66; that its "accrued" excess profits tax liability, for 1944 was $4,147,993.56; and that on the basis of those facts and of the principles enunciated in Lewyt, the plaintiff was entitled to deduct the $506,146.43 mentioned above as a net operating loss deduction for 1945, the first taxable year preceding the 1946 year, and as a result thereof to get back $214,010.08 of the *income* tax which it had paid for 1945.

In the amendment to its petition the plaintiff, in effect, adds only the claim that, on the above state of facts, it should also get back $173,100.20 of the *excess profits* tax which it had paid for 1945.

All of the physical events, the "conduct, transaction, or occurrence" are identical in the original and the amended petition except that the original petition stated how much *income* tax the plaintiff had paid for 1945 and the amended petition stated how much *excess profits* tax the plaintiff had paid for that year, both statements being made, of course, for the purpose of showing that there had been taxes which would be reduced if the operating loss for 1946 should be carried back to 1945.

■ We think no new operative facts were added by the amendment to the petition, and that the only change was the change in the legal consequences which the plaintiff asked us to deduce from the same set of operative facts. The Government argues that the income tax and the excess profits tax are separate taxes, separately enacted, separately returned by the taxpayer. Their separateness may be conceded, and may be important for many purposes. But for the purpose at hand, the propriety of an amendment to a pleading, their separateness seems not to be material. If the same operative facts produce legal effects upon separate interests of the same party, our Rule 18(c) would seem to permit the addition to the

**268**

pleading, by amendment, of an interest not included in the original pleading.

The plaintiff points to section 3807 of the Internal Revenue Code of 1939, 26 U.S.C. (1946 ed.) § 3807, which provided that when a particular application of the law or facts which resulted in a deficiency or overpayment in one tax, either income or excess profits, would also result in an increase or decrease in another such tax for the same taxable year, the statute of limitations barring recovery of such increase or decrease would be extended for one year.

The plaintiff says that this provision indicates that, although income and excess profits taxes were separate and distinct for some purposes, they were *"in pari materia"* for other purposes. The plaintiff says that the provision would permit plaintiff to file a claim for refund of the excess profits taxes within one year after this court rendered judgment for income taxes alone and that permitting the amendment thereby avoided multiplicity of actions. It seems that section 3807 has been repealed, 64 Stat. 1220, and if this is so, it nullifies the plaintiff's argument about multiplicity of actions. We think, however, that the enactment of section 3807 did indicate that the income and excess profits taxes were sufficiently related to constitute an additional justification of our action of allowing the amendment of the plaintiff's petition.

The defendant's motion for a summary judgment is denied. The plaintiff's similar motion is granted, and judgment will be entered to that effect. The amount of recovery will be determined pursuant to Rule 38(c).

It is so ordered.

JONES, Chief Judge, and LITTLETON, (Retired), LARAMORE and WHITAKER, Judges, concur.