**EASTMAN KODAK COMPANY**
v.
**UNITED STATES.**
No. 296–60.

United States Court of Claims.
July 19, 1961.

Richard B. Barker, Washington, D. C., for plaintiff. Joseph E. McAndrews and Ivins, Phillips & Barker, Washington, D. C., were on the brief.

George Willi, Washington, D. C., with whom was Louis F. Oberdorfer, Asst. Atty. Gen., for defendant. James P. Garland, Lyle M. Turner and Cynthia Holcomb, Washington, D. C., were on the briefs.

MADDEN, Judge.

The plaintiff sues for the refund of a part of the manufacturers' excise taxes which it paid when it sold its manufactured products to its dealers during the year 1954. During the latter months of 1954 the plaintiff distributed to its dealers certain advertising materials relating to the products which the dealers had bought from it. The plaintiff asserts that the cost to it of these advertising materials which it furnished, presumably gratis, to its dealers, constituted a price readjustment, analogous to a refund to the dealers of a part of the price they had paid the plaintiff. It says that it, therefore, became entitled to a refund of a part of the excise taxes which it had paid, which were based on the selling price of the products and did not take into consideration the cost of the advertising materials.

Section 3443(a) (2) of the Internal Revenue Code of 1939, 26 U.S.C. (1952 ed.) § 3443(a) (2), provides for a proportionate refund of manufacturers' excise taxes paid, if, after the sale, there has been a readjustment of the sale price. The defendant has moved to dismiss the plaintiff's petition on the ground that the plaintiff did not file a claim for refund within the four-year period prescribed by section 3313 of the 1939 Code, 26 U.S.C. (1952 ed.) § 3313. In its consideration of the instant motion the court does not, of course, consider the merits of the plaintiff's theory of recovery.

The expenditures upon which the plaintiff bases its asserted right to recover were, as we have seen, made in the last five months of 1954. The taxes which it seeks to recover were paid during those same months.

Section 3313 of the Internal Revenue Code of 1939, provides that all claims for refund of "any internal revenue tax alleged to have been erroneously or illegally assessed or collected, or of any penalty alleged to have been collected without authority, or of any sum alleged to have been excessive or in any manner wrongfully collected" except certain kinds of taxes not involved in this suit, must be filed within four years next after the payment of the tax. And section 3772, 26 U.S.C. (1952 ed.) § 3772, says in similar language that no suit may be brought in any court for the recovery of any such internal revenue tax until a claim for refund has been filed with the Commissioner, "according to the provisions of law in that regard."

On July 22, 1960, the plaintiff filed with the Commissioner a claim for refund of the taxes paid in 1954. Four days later, on July 26, the plaintiff filed its petition in this court. As we have seen, section 3313 fixes a period of four years. If section 3313 is applicable, the plaintiff's suit must fail, because section 3772 says that a taxpayer may not sue unless he has filed a claim for refund "according to the provisions of law in that regard." The provisions of law would, of course, include the provision as to the time within which the claim for refund must be filed.

The plaintiff says that section 3313, which requires the filing of the claim for refund within four years is not applicable. The asserted reason is that that section, according to its words, applies only to taxes "alleged to have been erroneously or illegally assessed or collected." The plaintiff says that its taxes were properly and rightly assessed and collected at the time it sold its products and paid the taxes, and that only the subsequent event, its expenditure for advertising materials,

caused it to be entitled to a refund of a part of the taxes paid.

If section 3313 making the timely filing of a claim for refund a condition precedent to suit, is not applicable, the plaintiff says that its position is that of having a right, given to it by section 3443, of getting a tax refund because of a readjustment of the sale price of its products, which right it may enforce in this court without any prerequisite presentation to the Commissioner of Internal Revenue. It says it is suing upon a claim "founded upon [an] Act of Congress," 28 U.S.C. § 1491, and that the period of limitation for such a suit is, under 28 U.S.C. § 2501, six years.

If sections 3313 and 3772, the former setting the time on the filing of claims for refund, and the latter making a timely claim for refund a prerequisite to suit, are taken literally, neither is applicable to the plaintiff's situation because both of them speak of taxes "erroneously or illegally assessed or collected." We think that taking these sections literally would be disruptive of good order in the interpretation and Administration of the tax statutes.

(1) From the tax statutes as a whole, it seems evident that Congress desires that claims for refund of taxes should be presented to and considered by the administrative officers in charge of taxes, before the Government is haled into court. Yet if section 3772 is not applicable to a claim such as the instant one, there is no requirement that a claim for refund be presented to the tax authorities. In the instant case a claim for refund was filed, but it was not filed until four days before the suit was filed, and its filing was obviously only a gesture. The importance of the claim for refund is well known to this court. In many cases there has been vigorous litigation, not only with regard to the timely filing of *a* claim for refund, but with regard to whether the claim filed was sufficiently pointed and informative to give the administrative authorities a fair opportunity to consider the claim later asserted in court. See e. g., United States v. Andrews, 302 U.S. 517, 58 S.Ct. 315, 82 L.Ed. 398; Caldwell Sugars, Inc. v. United States, 54 F.Supp. 544, 101 Ct.Cl. 395, 412.

(2) The jurisdiction of the District Courts over tax refund suits is defined by 28 U.S.C. § 1346(a) (1). That section provides District Court jurisdiction of actions

"for the recovery of any internal-revenue tax alleged to have been erroneously or illegally assessed or collected, or any penalty claimed to have been collected without authority or any sum alleged to have been excessive *or in any manner wrongfully* collected under the internal-revenue laws."

This language is identical with that of sections 3313 and 3772. If the latter sections are interpreted to exclude situations where a tax was correct when paid but became excessive upon the happening of a later event, it would follow that the jurisdiction of the District Courts is similarly limited.[1] Accordingly, the District Courts would not have any jurisdiction at all over suits such as the one we are here considering, except their jurisdiction, under the Tucker Act, of claims of $10,000 or less. But is it clear that section 1346 was intended to confer tax refund jurisdiction on the District Courts completely concurrent with this court's jurisdiction. In 1954, when Con-

---

1. The Supreme Court has pointed out that the essential language of section 1346(a) (1), originally enacted in 1921, 42 Stat. 311, seems to have been copied from H.R. § 3226, the predecessor of section 3772. Flora v. United States, 1958, 357 U.S. 63, 65, 78 S.Ct. 1079, 2 L.Ed.2d 1165, rehearing granted, 360 U.S. 922, 79 S.Ct. 1430, 3 L.Ed.2d 1538, prior decision reaffirmed, 1960, 362 U.S. 145, 80 S.Ct. 630, 4 L.Ed.2d 623. In its discussion of another problem in connection with the language of these sections, the Court observed that the meaning ascribed to the language as used in the claim-for-refund statute "provides the key to what Congress intended when it used that language in the jurisdictional provision." 357 U.S. at page 65, 78 S.Ct. at page 1081.

gress eliminated from section 1346 the $10,000 limitation on tax refund suits in the District Courts, the House Committee which considered the change in section 1346 indicated that its aim was to establish exact concurrence of tax-refund jurisdiction between this court and the District Courts. See H.R.Rep.No. 659, 83d Congress, 2nd Sess. (1954), 2 U.S. Code Cong. & Ad.News (1954) 2716, 2717.[2]

We think the way out of the *impasse* is to give to the language "erroneously or illegally assessed or collected," which language is used in the three sections of the Code discussed above, an interpretation which will make the sections compatible with each other and with the orderly administration of the tax laws. We therefore hold that taxes become "erroneously * * * collected" even though, when paid, they were due and owing, if thereafter, by reason of a readjustment of price, or a retroactive tax reduction statute, or a recomputation of profits by renegotiation, the taxpayer becomes legally entitled to get them back. From that time, he must be alert to his rights, as other taxpayers must be, and must, within the rather generous periods provided by the statutes, file his claim with the tax authorities. Such claims, if well founded, will, presumably, be administratively paid and will never become the subjects of suits. If they are rejected, the law provides for the time within which they may be taken to court.

Our decision in Westinghouse Electric Corp. v. United States, 140 F.Supp. 565, 135 Ct.Cl. 119, is directly in point and is contrary to what we hold here.[3] We are asked by the defendant to overrule Westinghouse. Upon a careful reconsideration of the problem, we have reached the conclusion that the defendant's position is correct, and that the decision in Westinghouse must be overruled. Our conclusion is based upon a reexamination of the meaning of sections 3313 and 3772 in the light of the Congress' purpose in enacting them, and also of another statutory provision which uses identical language. We also think it important that several recent decisions of this court have had the effect of substantially overruling the Westinghouse case, *sub silentio,* and that other courts have applied section 3772 in closely analogous situations.

This court has, in its decisions since Westinghouse, treated section 3772 (or its successor in the 1954 Code, section 7422(a), 26 U.S.C. (1958 ed.) § 7422(a) as applicable in situations where taxes became excessive after payment. In Verckler v. United States, Ct.Cl.1959, 170 F.Supp. 802, the court was confronted with a suit under a retroactive statute enacted after the plaintiff had paid its taxes. The Government's sole defense was based on section 7422(a) of the 1954 Code. The court held that section 7422 (a) did in fact apply, but that the required refund claim was timely if filed within the statutorily-required period

2. This report said: "At the present time, no suit against the United States to recover taxes may be brought in a district court if the claim exceeds $10,000. There appears to be no valid reason for thus restricting the district court's jurisdiction. The original reason for creating the limitation evidently was the feeling that taxpayers wealthy enough to be assessed taxes in excess of $10,000 could afford to go to Washington and pursue his [sic] rights in the Court of Claims. The remedy in the district court was created for the purpose of giving the smaller taxpayers who could not afford to pursue an action in Washington a practical remedy. The committee thinks that the greatly increased tax burden and the great increase in litigation of this

type which it has produced has made the fixing of any such monetary dividing line between remedies available to different taxpayers no longer practical or desirable. It is our opinion that all taxpayers, regardless of their financial status, should be permitted to pursue his [sic] remedy in the jurisdiction where he resides, or where the tax accrued, and not be required to go to the expense and practical difficulty of taking himself, his records, and his witnesses to Washington, procuring Washington counsel, and trying his case before the Court of Claims."

3. To the same effect is Philip Morris & Co., Ltd., Inc., to Use of Great American Ins. Co. v. United States, 100 F.Supp. 820, 120 Ct.Cl. 703.

as computed from the time of a constructive payment occurring on the date of passage of the retroactive statute.[4]

This court applied the requirement of a timely refund claim in Sicanoff Vegetable Oil Corp. v. United States, Ct.Cl.1960, 181 F.Supp. 265, which case also involved a claim for refund of taxes which had become excessive because of a retroactive statute. The court dismissed the plaintiff's petition on the ground that a proper claim for refund had not been timely filed.

In Zacks v. United States, Ct.Cl.1960, 280 F.2d 829, the court again applied the principle of the Verckler case, holding that the time for filing a refund claim should be counted from the date of passage of the retroactive statute. Cf. Hollander v. United States, 2 Cir., 1957, 248 F.2d 247, 250–251; Tobin v. United States 5 Cir., 1959, 264 F.2d 845, is not relevant, since the court there held the refund claim untimely on the ground that the new statute merely confirmed, and did not create, the right to the refund claimed. The same is true of United States v. Dempster, 6 Cir., 1959, 265 F.2d 666.

Further, in Sparton Corp. v. United States, Ct.Cl.1960, 279 F.2d 264, the court assumed the applicability of section 3772 as a requirement for filing a claim for refund of taxes which later became excessive as a result of a net operating loss carryback. The court there held the requirement to have been fulfilled.

Other courts have applied section 3772 (a) (1) in situations where a tax was correct when paid but became excessive upon the happening of later events, i. e., the renegotiation by the Government of the taxpayer's contracts. See United States v. Failla, 3 Cir., 1955, 219 F.2d 212 and United States v. Jackson, D.C., 131 F.Supp. 642, affirmed Jackson v. United States, 6 Cir., 1957, 242 F.2d 333, 334. But cf. Stow Mfg. Co. v. Commissioner, 2 Cir., 1951, 190 F.2d 723, certiorari denied, 342 U.S. 904, 72 S.Ct. 295, 96 L.Ed. 677.

A major consideration underlying this court's decision in Westinghouse was the plaintiff's assertion there that tax refunds in connection with warranty payments made in the fifth year of five-year warranties would be barred before the right to a refund arose, if section 3313 were applied. Such a result would, as the court observed, have been "illogical and unreasonable." 140 F.Supp. at page 568, 135 Ct.Cl. at page 125. With the development of the Verckler-Zacks doctrine, and its application to warranty payments, such a result will no longer obtain. In addition, we point out that the plaintiff's argument as to the unreasonableness of the application of section 3313 in the case of a five-year warranty does not really solve the problem. It appears cogent because section 3313 contains a four-year limitation period, while the general period of limitations of this court, under 28 U.S.C. § 2501, is six years. However, there are (as there were in Westinghouse) warranties for periods longer than six years. It would be just as unreasonable to bar refunds in connection with payments made under seven-year warranties under the six-year general statute as it would be to bar the refunds in the case of five-year warranties under the four-year statute. The Verckler-Zacks principle avoids the unreasonableness of both situations, provided the taxpayer has exhibited the minimal diligence of filing a claim for refund within four years of the time the warranty payments are made.

There is another language problem which requires discussion in connection with the interpretation which we adopt. Section 3313 requires that the claim for refund be presented to the Commission-

---

4. We recognize that Westinghouse distinguished a retroactive change in the law from the occurrence of facts in subsequent years. 140 F.Supp. at pages 567, 568, 135 Ct.Cl. at pages 124–125. We do not think that such a distinction is valid under the restrictive reading of the language of section 3772 (or section 7422).

er "within four years next after the payment of such tax * * *." If this language is read literally, this four-year period would begin to run from the time the goods were sold by the manufacturer and the excise tax was paid. Our interpretation requires that the word "paid" be read to refer to the time that the taxes, earlier paid, become retroactively refundable.

It is interesting to note the treatment which the sections involved in this case are given in the Internal Revenue Code of 1954. Section 3443(a) (2) of the 1939 Code[5] corresponds to section 6416 (b) (1) of the 1954 Code, which reads as follows:

"(b) Special cases in which tax payments considered overpayments. —Under regulations prescribed by the Secretary or his delegate credit or refund, without interest, shall be made of the overpayments determined under the following paragraphs:

"(1) Price readjustments.—If the price of any article in respect of which a tax, based on such price, is imposed by chapter 31 or 32, is readjusted by reason of the return or repossession of the article or a covering or container, or by a bona fide discount, rebate or allowance, the part of the tax proportionate to the part of the price repaid or credited to the purchaser shall be deemed to be an *overpayment*." [Italics added.]

Section 3313 of the 1939 Code appears as section 6511(a) of the 1954 Code, and has been changed to read as follows:

"§ 6511. Limitations on credit or refund

"(a) Period of limitation on filing claim.—Claim for credit or refund

of an *overpayment* of any tax imposed by this title in respect of which tax the taxpayer is required to file a return shall be filed by the taxpayer within 3 years from the time the return was required to be filed (determined without regard to any extension of time) or 2 years from *the time the tax was paid*, whichever of such periods expires the later, or if no return was filed by the taxpayer, within 2 years from the time the tax was paid. Claim for credit or refund of an overpayment of any tax imposed by this title which is required to be paid by means of a stamp shall be filed by the taxpayer within 3 years from the time the tax was paid." [Italics added].[6]

The legislative history of the 1954 Code does not indicate why the changes were made in the language of former sections 3313 and 3443. Unless, however, the words "the time the tax was paid" as used in the new section 6511 were intended to include the time an overpayment arose, as the result of the payment of a rebate, discount or allowance, the statute would quite clearly bar claims for refund of many "overpayments" even before the "overpayments" occur. Thus, under the 1954 Code, the anomaly sought to be avoided by Westinghouse would be present, unless the more liberal interpretation of the words "the time the tax was paid" is adopted.

The changes that were made by the 1954 Code do provide, however, an interesting indication of the meaning which the Congress understood the words "any internal revenue tax alleged to have been erroneously or illegally assessed or collected" to have. While those words were changed to read "overpayment of any tax", in section 6511, which governs the

5. "§ 3443. Credits and refunds.
   "(a) A credit against tax under this chapter, or a refund, may be allowed or made—* * *
   "(2) to any person who has paid tax under this chapter with respect to an article, when the price on which the tax was based is readjusted by reason of return or repossession of the article or a

covering or container, or by a bona fide discount, rebate, or allowance; in the amount of that part of the tax proportionate to the part of the price which is refunded or credited."

6. The purpose of this change appears to have been to substitute the three-year period for the previous four-year period.

time for filing a refund claim, they were not changed in the section [7] which requires that a claim be filed before a lawsuit may be instituted. Under the Westinghouse interpretation of those words, therefore, the 1954 Code would not permit the taxpayer to file a claim with the administrative authorities in a situation like that involved in our instant case unless it had been filed within a certain time, but would at the same time permit suit to be filed in court without any claim having been filed at all, at any time. We cannot think of a reason why the Congress would have intended to exempt taxpayers who become entitled to refunds, by reason of having paid out rebates or discounts, from the requirement of filing refund claims prior to suit, while at the same time providing a period of limitation for the presentation of such claims to the Treasury for administrative settlement. We do not think that the substitution of the words "overpayment of any tax" for the words "any internal revenue tax alleged to have been erroneously or illegally assessed or collected" was intended for such a purpose. We think rather that the substitution, without any indication that the Congress was making a change of substance, is an indication of the substantial equivalence of the two expressions.

If the statutes are interpreted as outlined above, the following advantages result: (1) There cannot be a case in which the statute of limitations bars recovery before the right to recover accrues; (2) there cannot be a case in which the taxpayer presents his claim to a court without first giving the administrative authorities an opportunity to consider and pass upon the validity of the claim; (3) the concurrent jurisdiction of the District Courts with this court in tax cases, which Congress intended to create, is recognized, and the symmetry and rationality of the several statutes using the same language is preserved.

There appears to be no resulting disadvantage, unless it is deemed a disadvantage to deny to some taxpayers the privilege of delaying their suit for six years, while all other taxpayers must bring their suits within four years, or the still shorter periods prescribed by some of the statutes.

For the foregoing reasons, the defendant's motion to dismiss is granted and the plaintiff's petition must be dismissed.

It is so ordered.

REED, Justice (Retired), sitting by designation, JONES, Chief Judge, and DURFEE and LARAMORE, Judges, concur.