Aaron ZACKS and Florence Zacks

v.

UNITED STATES.

No. 104–59.

United States Court of Claims.
July 15, 1960.

Scott P. Crampton, Washington, D. C., for plaintiffs. Robert F. Conrad, and Watson, Cole, Grindle & Watson, Washington, D. C., were on the briefs.

George T. Qualley, Arlington, Va., with whom was Asst. Atty. Gen. Charles K. Rice, for defendant. James P. Garland and Lyle M. Turner, Washington, D. C., were on the brief.

WHITAKER, Judge.

Plaintiffs sue for the recovery of an overpayment of income taxes by reason of having reported royalties received from patents as ordinary income. They allege that the amount paid was correctly computed according to the law, as interpreted by the rulings of the Internal Revenue Bureau, at the time it was paid, but that later Congress amended the Internal Revenue Code retroactively so as to provide that the amount received as royalties should be returned as capital gains rather than as ordinary income, which resulted in an overpayment.

The defendant interposes the defense that no claim for refund of the amount of the overpayment was filed within the statutory period. Plaintiffs reply that the amendment of the Internal Revenue Code, referred to above, created a new cause of action, and that the statute of limitations did not begin to run until after its passage.

The Act upon which plaintiffs rely is Public Law 629, passed on June 29, 1956 (70 Stat. 404). It added section 117(q) to the Internal Revenue Code of 1939, 26 U.S.C.A. § 117(q). This section reads:

"(q) *Transfer of patent rights.*—

"(1) *General rule.*—A transfer (other than by gift, inheritance, or devise) of property consisting of all substantial rights to a patent, or an undivided interest therein which includes a part of all such rights, by any holder shall be considered the sale or exchange of a capital asset held for more than 6 months, regardless of whether or not payments in consideration of such transfer are—

"(A) payable periodically over a period generally coterminous with the transferee's use of the patent, or

"(B) contingent on the productivity, use, or disposition of the property transferred.

\*    \*    \*    \*    \*    \*

"(4) *Applicability.*—This subsection shall apply with respect to any amount received, or payment made, pursuant to a transfer described in paragraph (1) in any taxable year beginning after May 31, 1950, regardless of the taxable year in which such transfer occurred. [Added by § 1 of the Act of June 29, 1956, c. 464, 70 Stat. 404.]"

The taxable year in question is 1952; thus, section 117(q) applies to this taxable year, and if it created a new cause of action, plaintiffs' suit is in time, having been filed just a few days less than two years from the passage of the Act.

Plaintiff's petition alleges that the law in effect prior to the passage of the Act of June 29, 1956, was construed by the Internal Revenue Bureau to require a taxpayer to report patent royalties as ordinary income. The defendant admits this in its answer. For the rulings of the Bureau see Mim. 6490, 1950–1 Cum. Bull. 9; Revenue Ruling 55–58, 1955–1 Cum. Bull. 97.

However, at the time of the passage of P.L. 629, supra, there were a number of court decisions to the contrary: Myers v. Commissioner, 6 T.C. 258; Kronner v. United States, 110 F.Supp. 730, 126 Ct. Cl. 156; United States v. Carruthers, 9 Cir., 219 F.2d 21; Commissioner of Internal Revenue v. Celanese Corp., 78 U.S. App.D.C. 292, 140 F.2d 339; and Commissioner of Internal Revenue v. Hopkinson, 2 Cir., 126 F.2d 406. But, notwithstanding these court decisions, the Bureau of Internal Revenue persisted in its interpretation and continued to require taxpayers to report such income as ordinary income.

██ It is well settled law, needing no citation of authority, that a taxpayer is bound to follow the interpretations of the law by the agency charged with its administration. This being true, plaintiffs had no option other than to report the income from patent royalties as they did report them. If plaintiffs believed that the interpretation of the law was incorrect, they were of course entitled to file a claim for refund and undertake to convince the Bureau of Internal Revenue of its error, and, in default thereof, they were entitled to bring suit to test the matter in the courts, as other taxpayers had done. The plaintiffs instead, no doubt influenced by the failure of other taxpayers to secure a reversal of the Bureau's rulings, did not question the correctness of what the governmental agency in charge of the enforcement of the law had ruled, but acquiesced in it, and paid their taxes accordingly.

Then, in view of the stubborn persistence of the Bureau in its interpretation of the law, and of its refusal to follow the decisions of this court and of three of the Circuit Courts of Appeals and of the Tax Court, Congress felt it necessary to pass an Act to set aside the law as interpreted by the Bureau, and to expressly provide that income from royalties might be reported as capital gains.

██ We think this gave to a taxpayer a right that he had not had before. At least, it gave him a right which the agency charged with the administration of the prior law said he did not have.

Furthermore, we think Congress must have intended to give some taxpayers a right which it must have known had long since been barred by the statute of limitations. Public Law 629 was passed on June 29, 1956; it was made applicable to all taxable years beginning after May 31, 1950; Congress must have known that the statute of limitations, which requires the filing of a claim for refund within three years after the return was filed, or within two years from the time the tax was paid, had long since run as to many taxpayers with respect to several of the years to which Public Law 629 was applicable.

Defendant says Congress intended Public Law 629 to apply only to those taxpayers who had filed claims for refund within time. There is no such express limitation and there is nothing in the Act itself or in its history to indicate Congress had any such intention. The Act was made applicable to the barred years without restriction.

We cannot escape the conclusion that, at least insofar as taxable years barred by the statute of limitations are concerned, Congress intended by the passage of Public Law 629 to give taxpayers a right which they did not have before its passage. Had they not so intended, it was an idle gesture to have made it applicable to years as far back as 1950.

In Verckler v. United States, Ct.Cl., 170 F.Supp. 802, decided March 4, 1959, we held that the remedial legislation involved in that case created a new cause of action and that a suit to recover was not barred because a claim for refund had not been filed within three years from the time the return was filed, or within two years from the time the taxes were paid. The Second Circuit Court of Appeals, in Hollander v. United States, 248 F.2d 247, was of the same opinion. However, the Sixth Circuit Court of Appeals, in United States v. Dempster, 265 F.2d 666, and the Fifth Circuit in Tobin v. United States, 264 F.2d 845, were of a contrary opinion. We are convinced of

the correctness of the view we take of the instant case and, therefore, notwithstanding our great respect for the Fifth and Sixth Circuit Courts of Appeals, we must decline to follow them.

It results that plaintiffs' motion to strike the defendant's second defense, raising the issue just discussed, must be granted. This defense will, therefore, be stricken. Defendant's motion to dismiss plaintiff's petition is denied.

The case is returned to the Trial Commissioner for further proceedings not inconsistent with this opinion.

It is so ordered.

JONES, Chief Judge, and DURFEE, LARAMORE and MADDEN, Judges, concur.

Laramore and Whitaker, JJ., dissented.