**Anton LORENZ and Irene Lorenz**

v.

**UNITED STATES.**

No. 277-59.

United States Court of Claims.

Dec. 6, 1961.

Robert H. Reiter, Washington, D. C., and Otto L. Walter, New York City, for plaintiffs. Spaulding, Reiter & Rose, Washington, D. C., were on the briefs.

Jerry M. Hamovit, Washington, D. C., with whom was Asst. Atty. Gen. Louis F. Oberdorfer, for defendant. James P. Garland, Lyle M. Turner, Edward S. Smith, and Philip R. Miller, Washington, D. C., were on the briefs.

WHITAKER, Judge.

This is a suit for refund of Federal income taxes. Plaintiff, Anton Lorenz, during the years with which we are concerned, was a professional inventor. In the joint return filed by him and his wife, Irene Lorenz, for 1952, there was reported, as ordinary income, receipts from the sale and assignment of patent rights. They claim they are taxable as capital gains, by reason of the passage of the Act of June 29, 1956 (70 Stat. 404), 26 U.S.C.A. § 117, subsequent, of course, to the filing of their return.

Defendant does not dispute that they are taxable as capital gains, but says plaintiffs are not entitled to recover because they did not file a claim for refund in time. Plaintiff filed such a claim on August 8, 1956. This was more than three years from the time their return was filed, and more than two years from the time the tax was paid. However, it was filed within a few days after the passage of the Act of June 29, 1956,

which authorized inventors to report as capital gain the profit derived from the sale of patent rights and received in whole or in part at any time after May 31, 1950.

The Internal Revenue Code of 1939 did not treat gains derived from the sale of patent rights differently from gains on the sale of any other property, and the Commissioner of Internal Revenue had held that amounts payable periodically under an exclusive license were taxable as ordinary income; but the Tax Court in Myers v. Commissioner, 6 T.C. 258, held that an amateur inventor was taxable on account of such payments as capital gains, if the patent had been held for more than six months.

At first the Commissioner acquiesced in this decision, but on May 31, 1950, he reversed himself, as to payments received after that date. This was notwithstanding a number of court decisions in accord with the Myers decision, supra.

Then Congress, in order to stop the erroneous ruling of the Commissioner, enacted section 1235 of the Internal Revenue Code of 1954, 26 U.S.C.A. § 1235. It provided that a transfer of an interest in all substantial rights in a patent should be treated as a sale or exchange of a capital asset, whether the consideration therefor was payable periodically over the life of the patent, or was contingent on its productivity, use or disposition. The relevant portion of the section is quoted in a note below.[1]

This Act applied only to payments received after its passage, and the Commissioner of Internal Revenue ruled that all payments received after May 31, 1950, the date of withdrawal of his acquiescence in the Myers decision, and before the effective date of the Internal Revenue Code of 1954, would be taxable as ordinary income. (His ruling did not apply to payments received before May 31, 1950, because prior to that date he had acquiesced in the Myers decision, and his withdrawal of acquiescence on May 31, 1950, was not made retroactive.)

So, payments under exclusive licenses received after the Myers decision in 1946 were taxable as capital gains; but after May 31, 1950, they were taxable as ordinary income; and then after the enactment of the Internal Revenue Code of 1954, they were again taxable as capital gains.

To remedy this anomaly, Congress on June 29, 1956, passed P.L. 629 (70 Stat. 404), which amended the Internal Revenue Code of 1939 to conform to section 1235 of the Internal Revenue Code of 1954, and made its provisions applicable to all payments received after May 31, 1950. It was unnecessary to make them applicable to an earlier date for the reason stated above.

Thus, payments received by plaintiffs in 1952 are taxable as capital gains. But defendant says plaintiffs are barred from recovery by their failure to file a claim for refund earlier than they did.

In Zacks v. United States, Ct.Cl. No. 104–59, 280 F.2d 829, 831, decided July 15, 1960, we said Congress, by the Act of June 29, 1956,

"* * * must have intended to give some taxpayers a right which it

---

1. "§ 1235. Sale or exchange of patents.

"(a) *General.*—A transfer (other than by gift, inheritance, or devise) of property consisting of all substantial rights to a patent, or an undivided interest therein which includes a part of all such rights, by any holder shall be considered the sale or exchange of a capital asset held for more than 6 months, regardless of whether or not payments in consideration of such transfer are—

"(1) payable periodically over a period generally coterminous with the transferee's use of the patent, or

"(2) contingent on the productivity, use, or disposition of the property transferred.

*     *     *     *     *

"(c) *Effective Date.*—This section shall be applicable with regard to any amounts received, or payments made, pursuant to a transfer described in subsection (a) in any taxable year to which this subtitle applies, regardless of the taxable year in which such transfer occurred."

must have known had long since been barred by the statute of limitations. Public Law 629 was passed on June 29, 1956; it was made applicable to all taxable years beginning after May 31, 1950; Congress must have known that the statute of limitations, which requires the filing of a claim for refund within three years after the return was filed, or within two years from the time the tax was paid, had long since run as to many taxpayers with respect to several of the years to which Public Law 629 was applicable.

"Defendant says Congress intended Public Law 629 to apply only to those taxpayers who had filed claims for refund within time. There is no such express limitation and there is nothing in the Act itself or in its history to indicate Congress had any such intention. The Act was made applicable to the barred years without restriction."

In this case we relied upon our prior decision in Verckler v. United States, 145 Ct.Cl. 252, 170 F.Supp. 802, and on the decision of the Court of Appeals of the Second Circuit in Hollander v. United States, 248 F.2d 247.

Later, in Eastman Kodak Co. v. United States, Ct.Cl. No. 296-60, 292 F.2d 901, decided July 19, 1961, we considered at length the problem of a retroactive statute and similar matters reducing a taxpayer's liability after the running of the statutory period for filing claims for refund. We said that taxpayers in such cases were required to file a claim for refund within two years after the retroactive statute was passed, or the happening of the other event creating the overpayment, and that a claim filed within this time was a sufficient compliance with the law fixing the period for the filing of refund claims. We said:

" * * * We therefore hold that taxes become 'erroneously * * * collected' even though, when paid, they were due and owing, if thereafter, by reason of a readjustment of price, or a retroactive tax reduc-

tion statute, or a recomputation of profits by renegotiation, the taxpayer becomes legally entitled to get them back. From that time, he must be alert to his rights, as other taxpayers must be, and must, within the rather generous periods provided by the statutes, file his claim with the tax authorities. Such claims, if well founded, will, presumably, be administratively paid and will never become the subjects of suits. If they are rejected, the law provides for the time within which they may be taken to court."

Claims filed within the statutory period after the passage of the retroactive legislation were held to be in time.

But defendant says the 1956 amendment of the Internal Revenue Code of 1939 did not create a new cause of action; that it was merely declaratory of preexisting law. For eleven years the Commissioner of Internal Revenue has been stubbornly maintaining that what it now says was the law was not the law. For eleven years he had been saying so in spite of the decision of the Tax Court and of the Courts of Appeals and of this court. He continued to say so after Congress enacted the Internal Revenue Code of 1954. Now, when he finds it profitable to do so, how can he justify the reversal of his position and now say the 1956 Act was merely declaratory of preexisting law?

The prime reason the filing of a claim for refund is made a prerequisite to suit is to give the Commissioner a chance to correct his error before being haled into court. But the reason for filing one no longer exists where the Commissioner, time and again, had reiterated his refusal to allow a claim such as this one, despite court decisions to the contrary and Congressional sanction of these decisions. True, the Commissioner's interpretation of the law was erroneous, but his persistence in it made the filing of a claim a futile act. It is not to be presumed that the law requires the doing of a futile act.

■ Under such circumstances, we think a taxpayer was not required to file a claim for refund until after the retroactive statute was passed. After this, there was some hope the Commissioner might allow it; there was none before. This taxpayer did file such a claim within a few days after the enactment of the retroactive statute.

Smith v. United States, D.C., 192 F. Supp. 208, is in accord with our conclusion, and with much of the reasoning through which we have arrived at that conclusion.

But in addition to the foregoing, the facts of this case are stronger than the facts in the Zacks case, supra, in this: Zacks was an amateur inventor; plaintiff here was a professional inventor. There was some justification for taxing the net sales of a professional inventor as ordinary income, because his inventions were his ·stock in trade, the things he had for sale, like other merchandise. We do not say this is a valid distinction, but it was one that was made and, perhaps, was correctly made. There are no court decisions to the contrary.

The report of the House Ways and Means Committee on H.R. 8300, which became the Internal Revenue Code of 1954 (H.Rept. 1337, 83d Congress, Second Session, dated March 9, 1954) stated as follows on page 82, U.S.Code Cong. and Admin.News 1954, p. 4108:

"A. Sale of patents by an inventor (sec. 1235)

"Under present law an amateur inventor may receive capital gains treatment on the outright sale of his patent but a professional may not. However, if a sale arrangement results in royalty income rather than installment payments, even an amateur inventor receives ordinary income tax treatment.

"The present distinction between amateur and professional inventors and between royalty income and installment payments is both arbitrary and confusing. Moreover, the present treatment tends to discourage scientific work.

"The bill makes no distinction between amateur and professional inventors or between royalty income and installment sales."

The report of the Senate Finance Committee on the same bill (Senate Rept. 1622, 83d Congress, Second Session, dated June 18, 1954) contained the following explanation, on page 113, U.S. Code Cong. and Admin.News 1954, p. 4747:

"E. Sale of Patents by an Inventor (sec. 1235)

"(1) House changes accepted by committee

"Under present law an amateur inventor may receiver capital gains treatment on the outright sale of his patent ·but a professional may not. However, if a sale arrangement results in royalty income, rather than installment payments, even an amateur inventor faces uncertainty as to whether he receives capital gains or ordinary income tax treatment.

"The present distinction between amateur and professional inventors and between royalty income and· installment payments is both arbitrary and confusing since, due to the inherent uncertainties, a royalty type of arrangement is the reasonable way for an inventor to sell a patent. Moreover, the present treatment tends to discourage scientific work."

The House members of the conference committee made. the following statement in their report to the House on this bill (House Rept. 2543, 83d Congress, Second Session, dated July 26, 1954) on page 70, U.S.Code Cong. and Admin. News,1954 p. 5331:

"This amendment makes three substantial changes * * * Third, as under the House bill, the professional inventor is accorded the same treatment as the amateur inventor * * *."

If this be accepted as the law prior to the enactment of the 1954 Code, net receipts by a professional inventor in 1952 were taxable as ordinary income, and it

was not until the amendment of the 1939 Internal Revenue Code by the Act of June 29, 1956, that such an inventor could claim that they were taxable as capital gains. This brings this case squarely within the rule of Eastman Kodak Co. v. United States, supra, and Verckler v. United States, supra, because it cannot be denied that the Act of June 29, 1956, supra, gave a professional inventor a cause of action that he had not had before, at least one that no one in authority had previously recognized.

Defendant's motion for summary judgment must be denied.

It is so ordered.

DARR, Senior District Judge, sitting by designation, JONES, Chief Judge, and DURFEE and LARAMORE, Judges, concur.