**KELLOGG-CITIZENS NATIONAL BANK OF GREEN BAY, WISCONSIN, Executor of the Estate of Joseph B. Holzer, Deceased**

**v.**

**The UNITED STATES.**

**No. 108-62.**

United States Court of Claims.
April 17, 1964.

[redacted]

Paul P. Lipton, Milwaukee, Wis., for plaintiff; Richard A. Petrie, Milwaukee, Wis., of counsel.

Philip I. Brennan, Washington, D. C., with whom was Asst. Atty. Gen., Louis F. Oberdorfer, for defendant; Edward S. Smith, Lyle M. Turner and Robert Livingston, Washington, D. C., were on the brief.

Before JONES, Chief Judge, REED, Justice (Retired), sitting by designation, and LARAMORE, DURFEE and DAVIS, Judges.

DAVIS, Judge.

In this estate tax refund suit, the first question to be decided is whether the taxpayer filed a timely claim with the Internal Revenue Service asking for the refund now sought. On that threshold issue the facts are undisputed. Plaintiff, as the executor of the estate of Joseph B. Holzer who died on April 21, 1954, filed an estate tax return on April 26 or 27, 1955, and immediately paid an estate tax of $26,275.37. About two years later, on June 25, 1957, the Internal Revenue Service issued deficiency notices claiming additional *income* tax and penalties (aggregating $111,581.45) from the decedent (and his wife) for the years 1945 through 1953. In September 1957, plaintiff, on behalf of the decedent, petitioned the Tax Court to set aside the proposed deficiencies in income taxes. The cases were to be heard in March 1960, but before trial they were compromised and the parties entered into settlement stipulations which were accepted by the Tax Court on April 7, 1960. Under the settlement, the court decided that there

were no deficiencies in the decedent's income taxes for 1945 through 1947, but that additional taxes and penalties amounting to $41,685.37 were owing for 1948 through 1953. These additional taxes and penalties were assessed on June 3, 1960, and paid by the estate (with interest) on June 13, 1960.

No part of these extra taxes, penalties, or interest was deducted on the original estate tax return, nor had the plaintiff deducted the legal fees of $14,000 paid to the attorney representing the estate before the Tax Court.

On June 17, 1960, very shortly after payment of the additional income taxes, plaintiff filed an amended estate tax return and a claim for refund of estate taxes in the sum of $17,739.46. On April 26, 1961, the estate filed an amended refund claim raising its demand to $24,-334.62. Both claims rested largely on a recomputation of the estate tax to allow as deductions the additional income taxes (including penalties and interest), as well as the legal fees.[1] (The plaintiff's position was that these taxes and fees were properly deductible in computing the estate tax.) The two refund claims were denied by the Service on September 8, 1961. This suit was begun on April 12, 1962.

The Government's point (on its motion for summary judgment) is simply that, although the statute requires a refund claim for estate taxes to be filed within three years of the payment of the estate tax (here, April 26 or 27, 1955), the plaintiff's first claim was not presented to the Internal Revenue Service until some five years later (on June 17, 1960).[2] The terms of the statute are mandatory, the

defendant urges, and those terms plainly close the door to this action. The taxpayer's reply is that it did not know until the Tax Court determination of April 7, 1960—about two years after the three-year period would normally have expired —how much additional income taxes (plus penalties and interest) the decedent owed and therefore how much of a deduction from the estate tax it could claim on account of those extra income taxes. In these circumstances, the plaintiff contends, the limitations period for estate tax refund claims cannot have run from April 1955, but must have begun in the spring of 1960 when the Tax Court decided the decedent's income tax case and the plaintiff paid the additional taxes; it is said that, if the three-year period ended in April 1958, plaintiff would be precluded from filing a refund claim before it knew that it had one and in what amount.

Because the arguments in support of these opposing positions implicated questions upon which the Supreme Court might pass in United States v. Zacks, U.S.Sup.Ct., Oct. Term 1962, No. 632, Oct. Term 1963, No. 44, then pending on writ of certiorari (granted Jan. 14, 1963, 371 U.S. 961, 83 S.Ct. 543, 9 L.Ed. 2d 509), we deferred disposition of this case until after the decision of the Supreme Court. That ruling has now been made (375 U.S. 59, 84 S.Ct. 178, 11 L.Ed. 2d 128), and the present parties have given us supplemental memoranda on the impact of the Zacks holding and opinion. Although Zacks is quite a different case, our view is that the opinion of the Supreme Court reflects basic attitudes which should guide us in dealing with the present problem.

1. The amended claim was filed as the result of the plaintiff's own reconsideration of the estate tax liability in the light of additional taxes and fees.

2. In this case the argument is the same under the 1939 and the 1954 Codes. Section 910 of the 1939 Code provided that "all claims" for refunds of estate taxes "must be presented to the Commissioner within three years next after the payment of such tax." Section 6511(a)

of the 1954 Code makes the period either three years after the filing of the return or two years after payment, whichever is longer. The bar to suit on an untimely claim is raised by Section 7422(a) of the 1954 Code which forbids suit for the recovery of any internal revenue tax alleged to have been erroneously or illegally assessed or collected until a claim for refund has been duly filed according to law.

In Zacks, an investor receiving royalties in 1952, in exchange for grant of an exclusive license, reported the royalties as ordinary income in that year and paid the tax in 1953; under the general limitations statute for income tax refunds, any claim for those taxes was barred in 1956. In June 1956, Congress amended the 1939 Code, for all tax years beginning after May 31, 1950, to provide that such royalties should be taxed as capital gain rather than as ordinary income. In 1958, within two years of the amendment, the taxpayer filed a claim for refund based on the new provision. As against a government defense of limitations, this court held that the amendment created a new cause of action giving the taxpayer two years (from the date of the legislative change) to file for a refund. 280 F.2d 829, 150 Ct.Cl. 814 (1960). The Supreme Court reversed, ruling that, though Congress had made the amendment retroactive, it had not extended or tolled the statute of limitations; the amendment could apply only to prior years which had been kept open by the taxpayer.

In its facts and the issue squarely before the Court, Zacks is not at all the counterpart of this case. We do not have a retrospective modification of a substantive tax provision, nor do we have the same history and circumstances as those surrounding the 1956 patent royalty amendment with which the Supreme Court was concerned. The Zacks opinion is nevertheless instructive because of the basic postulates it implicitly embodies, as well as the direction it takes. A fair reading of the opinion impels us to conclude that the Supreme Court (a) neutralized that part of the general theory of our earlier opinions (Verckler v. United States, 170 F.Supp. 802, 145 Ct.Cl. 252 (1959); Zacks v. United States, supra; Eastman Kodak Co. v. United States, 292 F.2d 901, 155 Ct.Cl. 256 (1961); Lorenz v. United States, 296 F.2d 746, 155 Ct.Cl. 751 (1961))[3] which may have seemed to suggest the extension of the statute of limitations whenever an event reducing a taxpayer's liability occurred after the payment of the tax or the filing of the return; and (b) indicated, at the least, that the normal limitations period in tax cases should continue to be applied unless there are good reasons for thinking that Congress established a new or prolonged period. Those two benchmarks are helpful in pointing out the route we should follow.

The significant fact, for the present controversy, is that the plaintiff knew, some ten months before the expiration of the three years within which it could file a normal refund claim on the estate tax, that the Internal Revenue Service was demanding extra tax and penalties on account of the decedent's income tax liability before his death. The deficiency notices were issued on June 25, 1957, and the three-year period would not close until April 26 or 27, 1958. The estate thus had notice, a substantial time before the bar would fall on a claim for refund of the estate tax, that the defendant considered the decedent to be liable for additional income taxes. Since such a demand, if sustained, would most probably result in further deductions useable in computing the estate tax, the estate had the opportunity to protect itself by filing, within the remaining ten months, a protective claim for refund. True, the estate could not be sure, until the close of the Tax Court proceedings, whether the extra income taxes would actually be assessed and paid, or the precise amount which would be collected. But the Commissioner had taken formal steps toward an assessment, and his determination was presumed to be correct until overthrown. Jacobs v. United States, 126 F.Supp. 154, 131 Ct.Cl. 1, 5(1954); McClure v. United States, 48 F.Supp. 531, 98 Ct.Cl. 381, 388 (1943). If the plaintiff had allowed the assessment to be levied, had paid the additional tax, and then made claim for a refund of the *income* tax, there is little doubt that it could also have filed at that time for a refund of the *estate* tax at-

3. The Lorenz decision, along with Zacks, was directly overruled by the Supreme Court in its Zacks ruling.

tributable to the extra income taxes paid, even though the result of the income tax refund suit was not yet known. Plaintiff chose the alternative route of a Tax Court review. In that posture, nothing prevented the estate from doing the best it could, *i. e.*, filing a protective refund claim based on the deficiency notices it had received.[4] That would have informed the Commissioner of Internal Revenue of the interrelationship between his income tax demand and the ultimate amount of the estate tax. It would also have warned him of the estate's intention to press for a reduction in its estate tax if the income tax controversy ended in the Commissioner's favor. In the circumstances, a protective notice would have fulfilled all the major aims of the requirement that a refund claim be filed. See American Radiator & Standard Sanitary Corp. v. United States, Ct.Cl., 318 F.2d 915, 920–921 (1963); Harlan v. United States, Ct.Cl., 312 F.2d 402, 408 (1963); National Forge & Ordnance Co. v. United States, 151 F.Supp. 937, 139 Ct.Cl. 222 (1957).

■ Though plaintiff insists that no adequate refund claim could be presented, at that time, since neither the existence nor the amount of the additional income tax liability had been settled and there was therefore no deduction from the estate tax which could then be properly claimed, we think that, to avert the bar of limitations, plaintiff should have gone as far as it reasonably could to protect its potential right to a refund. The critical three-year period was coming to an end and plaintiff should not have assumed that that period would be extended or renewed for it at the close of the Tax Court proceedings. As we have pointed out, a tolerable claim, acceptable in the circumstances, could have been filed shortly after June 1957. If the income taxes had been paid at once and then tested by a refund suit, an immediate refund claim for the estate taxes would surely have been proper. It is hard to see a difference in the application of the statute of limitations depending upon the method the taxpayer selected to test its income tax claim. Perhaps if the general rule were that events occurring after the filing of a return or payment of the tax operated to prolong the time for filing a refund claim, the plaintiff would have been justified in allowing the regular limitations period to pass. But the Supreme Court's Zacks opinion teaches, we think, that there is no such general principle. The statute normally runs from the fixed date its terms appear to establish.[5] Here, that point is the payment of the tax (see footnote 2, *supra*). In more technical terms, the ordinary rule is that the estate tax must be taken to have been "paid" or "overpaid" when the actual payment was made, not at some later time, even though events occasioning a decrease in liability for the tax may occur after the payment. At least where, as here, a substantial part of the usual limitations period remains when the taxpayer learns of the events causing, or likely to cause, a diminution in his liability, he should file a protective refund claim in order to preserve his position. If he fails to do so, he will allow the limitations bar to fall. In a case like this, there is no sufficient reason to think that Congress intended anything more than the normal period.

■ We do not have, in this instance, a controversy in which the events in-

---

4. Protective claims are not unknown to federal tax practice. See First National Bank of Montgomery v. United States, 280 F.2d 818, 820, 150 Ct.Cl. 798, 801–802 (1960). Successive claims may be filed, defective claims cured, and informal claims turned into formal ones. See Mertens, The Law of Federal Income Taxation, (Zimet rev.), §§ 58.17–58.18, 58.20–58.21, 58.23.

5. For instance, in a Zacks-type case a taxpayer who had (unlike Mrs. Zacks) kept the year 1952 open would have, after the June 1956 amendment, only until the end of his pre-existing limitations period in which to file a claim based on the amendment. He would not have two or three years from the date of the amendment. The same is true for the years 1954 and 1955 which would probably not be barred by the time of the amendment.

voked by the taxpayer for his refund claim first occurred after the general limitations period had expired.[6] Such cases raise an additional problem—whether there can "be a case in which the statute of limitations bars recovery before the right to recover accrues" (Eastman Kodak Co. v. United States, supra, 292 F.2d at 907, 155 Ct.Cl. at 267)—which we leave undecided for the present. What we hold today is that, since the plaintiff-estate had adequate time, after receiving the deficiency notices (on the income taxes), in which to file a protective claim for refund of the estate tax before the normal limitations period ended, the estate is now precluded by its failure to take that step. The normal three-year period applies and there is no reason to stretch it.

The defendant's motion for summary judgment is granted, the plaintiff's motion is denied, and the petition is dismissed.

---

6. This court's Verckler, Zacks, Eastman Kodak, and Lorenz decisions, cited supra, all involved situations in which the critical events were post-limitation.