85 F.3d 1464
 77 A.F.T.R.2d 96-2533, 96-2 USTC P 50,362
 AMOCO PRODUCTION COMPANY, a Delaware Corporation, Plaintiff-Appellee,
v.
NEWTON SHEEP COMPANY, a limited partnership, Defendant-Appellant,
and
United States of America, et al., Defendants.
Scott NEWTON; Florence Bentine; Virginia Burke; Jane Ann
Holman, trustee of the James Newton Trust; Edna Newton;
George Newton; Ralph Newton, individually and as trustee of
the Bessy Newton Trust, Plaintiff-Appellants,
v.
UNITED STATES of America, Defendant-Appellee.
 Nos. 94-4242, 95-4169.
 United States Court of Appeals,
Tenth Circuit.
 June 6, 1996.
 
 Dale E. Anderson, Spencer & Anderson, Salt Lake City, Utah (Claron C. Spencer with him on the briefs), for Defendant-Appellant and Plaintiff-Appellants.
 Jeffrey E. Nelson, Van Cott, Bagley, Cornwall & McCarthy, Salt Lake City, Utah, for Plaintiff-Appellee.
 Gilbert S. Rothenberg and Bridget M. Rowan, Attorneys, Tax Division, U.S. Department of Justice, Washington, DC, on the brief, for Defendant-Appellee.
 Before TACHA, BALDOCK, and KELLY, Circuit Judges.
 TACHA, Circuit Judge.
 
 
 1
 The first of these cases began as a suit by Amoco Production Company (Amoco) to quiet title to oil and gas in certain lands in Summit County, Utah. The defendants in that action were originally the United States and its lessees, who claimed title to one-half of the oil and gas, and the Newton Sheep Company (the Newtons), a Utah family limited partnership, and its grantees, who claimed title to all of the oil and gas. In addition, there was a related dispute between the Newtons and Bass Enterprises Production Co., one of the Newtons' grantees, over title to one-half of the oil and gas. The issues relating to the ownership of the oil and gas were resolved in two decisions by this court in 1988. Amoco Prod. Co. v. United States, 852 F.2d 1574 (10th Cir.1988); Amoco Prod. Co. v. United States, 852 F.2d 1581 (10th Cir.1988). Thereafter, disagreements arose between Amoco and the defendants other than the United States regarding Amoco's accounting for the proceeds of the oil and gas that Amoco had purchased from the production of the leased lands during the years of the title dispute (1976-1988). Most of these accounting issues were settled. However, the Newtons' claim that Amoco had improperly withheld, on behalf of the Newtons, windfall profit taxes from unpaid oil proceeds during the years 1980-1987 was not resolved. The Newtons maintain that they did not become liable for the tax until 1990, after the title dispute was settled and the first payment to the Newtons from Amoco's oil purchases was authorized, and claim that Amoco now owes the Newtons interest on the withheld royalties. The Newtons also contend that Amoco did not properly report the withholdings to them, and that they were consequently unable to obtain a refund, with interest, from the United States. The Newtons filed a motion for summary judgment on these issues in the district court. The district court held that Amoco did not owe the Newtons interest on the withheld royalties. The Newtons now appeal that decision.
 
 
 2
 The second case involves the same windfall profits tax withholdings as the first, except that the owners of the Newton Sheep Company seek a refund of the interest on the withheld royalties from the United States, as an alternative to recovering against Amoco. The district court held that the three-year statute of limitations in 26 U.S.C. § 6511(a) and the two-year monetary cap on recovery in 26 U.S.C. § 6511(b)(2)(B) bar the Newtons from recovering the interest on the withheld royalties from the United States. The Newtons now appeal that decision. This court consolidated the Newtons' appeals in the two cases. We exercise jurisdiction pursuant to 28 U.S.C. § 1291 and affirm both decisions of the district court.I. Background
 
 
 3
 Amoco sued to quiet title to the oil and gas in 1976. The proceeds of Amoco's oil and gas purchases that would have been paid to the Newtons, but for the title dispute, were suspended and held by Amoco in an escrow account from the beginning of production in 1976 until January 1982. At that point, the district court ordered that all royalties retained by Amoco and the other plaintiffs, as well as all future royalties, were to be deposited with the clerk of the district court and invested in U.S. Treasury Bills. In 1988, this court resolved the issues of title to the oil and gas. Amoco Prod. Co. v. United States, 852 F.2d 1574 (10th Cir.1988); Amoco Prod. Co. v. United States, 852 F.2d 1581 (10th Cir.1988). In July 1989, the district court ordered that all funds that had been deposited with the clerk, as well as all future royalties, be deposited in an escrow account with a bank in Salt Lake City, Utah, where they were to remain until further order of the court. On July 17, 1990, the district court authorized the first of three distributions of the money (principal and interest) held in the escrow account. This was the first occasion on which the Newtons received any of the proceeds from Amoco's purchases.
 
 
 4
 In February 1980, during the quiet-title phase of this litigation, Congress enacted the Windfall Profit Tax on domestic crude oil, 26 U.S.C. §§ 4986-4990. This tax remained in effect until it was repealed on August 23, 1988, as to crude oil removed on or after that date. 102 Stat. 1322 (1988). Beginning in June 1982, Amoco began sending to the Newtons copies of Amoco's periodic checks to the clerk of the court. Amoco also sent to the Newtons statements that detailed, with respect to each piece of property, the total quantity of oil purchased by Amoco, various deductions including "crude oil excise tax [windfall profit tax] deductions," and the pre-tax and post-tax interests of the producers (royalty owners). Amoco also filed Form 6248, Annual Information Return of Windfall Profit Tax, with the Internal Revenue Service (IRS) each year, as required by 26 C.F.R. § 51.4997-2(a) (1983). Beginning in January 1983, Amoco also mailed to the clerk of the district court a copy of IRS Form 6248, indicating the withholdings for the previous year. Amoco did not send additional copies of the Forms 6248 to the Newtons. None of the annual Forms 6248 indicated the Newtons' specific share of Amoco's oil purchases or of the windfall profit taxes withheld. This information would not become available until the resolution of the quiet title action. In November 1990, Amoco provided the first accounting that allocated to the Newtons an amount of unpaid oil proceeds and an amount of windfall profit tax withheld. The accounting provided this information on a monthly basis for the years 1980-1987. In all, $215,518.85 in windfall profit taxes allocated to the Newtons were withheld by Amoco for the years 1980-1987. The time value of the money withheld, as of the briefing of this court, was approximately $328,000.
 
 
 5
 On April 15, 1994, the Newtons filed administrative claims with the IRS for a refund of windfall profit taxes withheld plus statutory interest, arguing that Amoco was not required to make the windfall profit tax withholdings during the period of the title dispute. The IRS denied the Newtons' refund claim, arguing that it was time-barred by the three-year statute of limitations in 26 U.S.C. § 6511(a).
 
 
 6
 II. The Point at which the Proceeds Became Taxable
 
 
 7
 We review the district court's summary judgment rulings de novo. Wolf v. Prudential Ins. Co., 50 F.3d 793, 796 (10th Cir.1995). The threshold question in this case is whether the proceeds that Amoco suspended during the years 1980-1982 and deposited with the district court clerk during the years 1982-1987 were actually taxable at the time that Amoco withheld the windfall profit taxes. We conclude that they were not. Although the Windfall Profit Tax was not an "income tax" as such, see Hall v. United States, 975 F.2d 722, 726 (10th Cir.1992) (stating that the mitigation provisions of 26 U.S.C. §§ 1311-14 "relate to claims for refund of income taxes, not other taxes such as the windfall profit tax...."), it was a tax that was determined in part by the recognition of income from oil proceeds.
 
 
 8
 Section 4986 of the Internal Revenue Code imposed a tax on the windfall profit from taxable crude oil removed from the premises during each taxable period. 26 U.S.C. § 4986. Section 4988(b)(1) provided a net income limitation (NIL), such that the windfall profit on any barrel of crude oil could not exceed ninety percent of the net income attributable to that barrel. 26 U.S.C. § 4988(b)(1). According to 26 C.F.R. § 51.4988-2(b)(1)(iii), the calculation of the number of barrels that were taken into account for NIL purposes required a determination of the "number of units ... sold within the taxable year," as defined by 26 C.F.R. § 1.611-2(a)(2). Under section 1.611-2(a)(2), a barrel was considered sold in the year in which the taxpayer recognized the income from that sale under its method of accounting. Thus, in order for the NIL provisions of the Windfall Profit Tax to have effect, the income had to be recognized by the taxpayer. Income from funds held in escrow is not recognized until the funds are released. Therefore, the oil proceeds involved in this case did not become taxable under the Windfall Profits Tax until their release to the Newtons in July 1990.
 
 
 9
 This understanding of the timing of income recognition for windfall profit tax purposes is further supported by 26 U.S.C. § 4988(b)(3). According to section 4988(b)(3), subject to certain exceptions, the taxable income from the oil-producing property is determined under the rules stipulated in 26 U.S.C. § 613(a), which govern the calculation of depletion allowances for income from mines, wells, and other natural deposits. This court has established that, with respect to the depletion allowance, income recognition does not occur where proceeds are held in an escrow account. Crews v. Commissioner, 89 F.2d 412 (10th Cir.1937). "[G]ain or profit from property, though it comes into existence, does not become gross income until it is derived, that is received by the taxpayer." Id. at 416. This holding drew upon the Supreme Court's decision in North American Oil Consolidated v. Burnet, 286 U.S. 417, 52 S.Ct. 613, 76 L.Ed. 1197 (1932), in which the Court concluded that profits held in receivership were not taxable as income until the taxpayer actually became entitled to the funds. Because 26 U.S.C. § 4988(b)(3) explicitly required that taxable income be determined under the depletion allowance provisions of the Internal Revenue Code, we hold that the depletion allowance timing rule applied in Crews also applies to the calculation of income under the Windfall Profit Tax. While funds are held in escrow, the producer does not have an accession to wealth; thus, there are no grounds for the imposition of the tax at that point. Only after the proceeds are removed from escrow are they recognized by the producer as income.
 
 
 10
 The same conclusion was reached in MacPherson v. United States, 614 F.Supp. 589 (C.D.Cal.1985). In that case, oil-producing properties were placed in the custody of a state court pending the outcome of contract dispute concerning the sale of the properties. Following the precedents of North American Oil and Crews, the MacPherson court granted a refund of the windfall profit tax that had been withheld:
 
 
 11
 These decisions compel the conclusion that MacPherson did not have an accession to wealth from the oil properties in 1980 and thus did not have taxable income in that year for purposes of assessing a windfall profits tax.... Only in 1982, when the state court rendered its judgment and purchase money was tendered, did the partners ... first become entitled to the money and actually received such money. Moreover, the code provides that taxable income for purposes of the windfall profits tax shall be determined under § 613(a), the successor provision to the one relied upon in Crews. Thus, this Court finds that under § 613(a), and therefore under the windfall profits tax pursuant to § 4988(b)(3)(A), a taxpayer has received no taxable income if the funds were being held in custodia legis.
 
 
 12
 Id. at 590-591. Accordingly, we hold that the Newtons were not liable to pay windfall profit taxes at the time Amoco withheld the funds. We now turn to the secondary questions of whether the Newtons may recover the interest on these withholdings from either Amoco or the United States.III. The Newtons' Claims Against Amoco
 
 
 13
 Amoco maintains that it properly withheld windfall profit taxes from the oil proceeds during the period of the title dispute. Amoco cites 26 U.S.C. §§ 4995(a)(1)(A) and (B) in support of its contention that, as first purchaser of the oil, it was required to withhold windfall profit taxes from the proceeds regardless of whether title to the property was in dispute. Section 4995(a)(1) states:
 
 
 14
 (A) the first purchaser of any domestic crude oil shall withhold a tax equal to the amount of the tax imposed by section 4986 with respect to such oil from amounts payable by such purchaser to the producer of such oil, and
 
 
 15
 (B) the first purchaser of such oil shall be liable for the payment of the tax required to be withheld under subparagraph (A) and shall not be liable to any person for the amount of any such payment.
 
 
 16
 The Newtons counter that these statutory provisions and the regulations promulgated to effectuate them refer to "amounts payable" to the producer of the oil. They argue that, because the identity of the producer was in dispute and no payments to the producer were occurring, the withholding requirements did not apply in this case. The Newtons also maintain that Amoco failed to follow the reporting procedures required by 26 C.F.R. § 51.4997-2(e):
 
 
 17
 Suspended accounts. If, due to the fact that the identity of the producer is not known or is in dispute, the sales proceeds of crude oil have been placed in escrow or otherwise held in suspense and have not been distributed to the producer at the time that the information return is required to be filed under paragraph (c), a return (Form 6248), clearly identified as relating to suspended funds, shall be filed for each such account. At the filer's option, some or all of the returns may be aggregated into a single return. Not later than 60 days after the sales proceeds have been released to the producer, an information return shall be filed with an identification of the producer, and the statements required by paragraphs (c) and (d) of this section for past periods shall be furnished to the producer.
 
 
 18
 In addition, the Newtons maintain that Amoco improperly sent copies of the Forms 6248 to the clerk of the district court as "disburser" of the proceeds in escrow, rather than to the Newton Sheep Company partnership.
 
 
 19
 The district court found in favor of Amoco on these claims without comment. As the district court held in its order of September 27, 1994, Amoco Production Co. v. United States, No. C-76-0019A (final judgment and decree), with reference to its earlier order of March 26, 1993, Amoco Production Co. v. United States, No. C-76-0019A (order granting and denying motions for summary judgment), "Amoco Production Company is not responsible for interest on withheld royalties or for damages arising from Windfall Profit Taxes withheld from royalties paid to the defendants or on their behalf." Albeit sparse, the conclusion of the district court is correct.
 
 
 20
 We reject the Newtons' interpretation of the words "amounts payable by such purchaser to the producer of such oil" in 26 U.S.C. § 4995(a)(1)(A). Proceeds from the removal of crude oil are "amounts payable ... to the producer," regardless of whether the payments are made directly to the producer or they are temporarily placed in an escrow account pending the determination of the identity of the producer. Thus, it was appropriate for Amoco, as first purchaser, to withhold windfall profit taxes from the proceeds suspended or deposited with the clerk of the court.
 
 
 21
 Moreover, the requirements of 26 C.F.R. § 51.4997-2(e) implicitly support the view that Amoco properly withheld windfall profit taxes at the time of the removal of the oil. Section 51.4997-2(e), which specifically concerned sales proceeds held in suspense or escrow because of a dispute over the identity of the producer, required the filing of tax return Form 6248. Completing this form necessitated a calculation of windfall profit tax liability, the reporting of windfall profit taxes withheld, and the determination of underwithholdings or overwithholdings. There would have been no need for such information as to escrowed funds if first purchasers were not required to withhold windfall profit taxes from those funds.
 
 
 22
 The Newtons' contend that Amoco failed to meet the reporting requirements of 26 C.F.R § 51.4997-2(e). First purchasers were required to withhold the tax, 26 U.S.C. § 4995(a)(1), and by annually filing Form 6248 for the suspended accounts, Amoco met the first reporting requirement. Amoco plainly did not meet the second and third requirements, that an information return (Form 6248) be filed identifying the producer not later than sixty days after the release of sales proceeds and that statements required by 26 C.F.R. §§ 51.4997-2(c) and (d) be furnished to the producer. By way of background, first purchasers were required to make any withholding adjustments in suspense accounts until distribution of proceeds. Rev.Rul. 84-47, 1984-1 C.B. 231. The first purchaser's ability to adjust withholding ended once a Form 6248 was furnished to a subsequently identified purchaser. 26 C.F.R. § 51.4995-1(c)(1)(ii). Thereafter, only the producer could claim a refund of tax or interest. Rev.Rul. 84-168, 1984-2 C.B. 308. Despite the importance of compliance with the second and third requirements, we conclude that Amoco's failure to comply was not the proximate cause of the Newtons' alleged injury because their tax claims are barred by limitations.
 
 
 23
 Finally, we reject the Newtons' contention that Amoco incorrectly sent copies of the Forms 6248 to the clerk of the district court rather than to the Newton Sheep Company partnership. Under 26 C.F.R. § 51.4997-2(c), Amoco was required to furnish statements of windfall profit tax liability to each "producer, operator, partnership, or disburser to whom the purchaser made payments for crude oil purchased during the calendar year." The clerk of the district court, as overseer of the proceeds during the title dispute, functioned as a "disburser" for the purposes of 26 C.F.R. § 51.4997-2. Thus, the clerk was the appropriate recipient of copies of the Forms 6248.
 
 
 24
 IV. The Newtons' Refund Claim Against the United States
 
 
 25
 The windfall profit taxes were paid during the years 1980-1986. Under 26 U.S.C. § 4995(a)(4)(B), the producer of crude oil was treated "as having made [tax payments] on the last day of the first February after the calendar year in which the oil is removed from the premises." The Newtons did not file their claim for a refund of the windfall profit taxes withheld by Amoco until April 15, 1994. The Internal Revenue Code imposes a three-year period of limitation for filing such refund claims:
 
 
 26
 Claim for credit or refund of an overpayment of any tax imposed by this title in respect of which tax the taxpayer is required to file a return shall be filed by the taxpayer within 3 years from the time the return was filed or 2 years from the time the tax was paid, whichever of such periods expires the later, or if no return was filed by the taxpayer, within 2 years from the time the tax was paid.
 
 
 27
 26 U.S.C. § 6511(a) (emphasis added). As crude oil producers, the Newtons were not required to file a tax return with respect to the windfall profit taxes withheld by the purchaser, Amoco. 26 U.S.C. § 4995(a)(5). However, at the time the Windfall Profit Tax was in effect, section 6511(h) of the Internal Revenue Code provided that, in the windfall profit tax context, the return referred to in section 6511(a) would be the income tax return of the person liable to pay the windfall profit tax in the calendar year of the oil's removal:
 
 
 28
 In the case of any oil to which section 4995(a) applies and with respect to which no return is required, the return referred to in subsection (a) shall be the return (of the person liable for the tax imposed by section 4986) of the taxes imposed by subtitle A for the taxable year in which the removal year ... ends.
 
 
 29
 26 U.S.C. § 6511(h). Accordingly, for the purpose of applying the three-year rule of section 6511(a), the starting point for the running of the statute of limitation for each partner in the Newton Sheep Company was the due date of his or her individual income tax returns for 1980 through 1986.[1] Therefore, the limitation period for the last year at issue, 1986, began to run on the due date of the taxpayers' 1986 income tax returns--April 15, 1987. Thus, the taxpayers had until April 15, 1990, to file an administrative claim for a refund with respect to windfall profit taxes paid in 1986. The date on which they actually filed their claim--April 15, 1994--fell well outside the limitation period.
 
 
 30
 Moreover, as the district court correctly concluded, apart from the limitation period imposed by section 6511(a), recovery against the United States is also barred by section 6511(b)(2)(B), which restricts the amount recoverable to amounts paid in the two years preceding the claim: "If the claim was not filed within such 3-year period, the amount of the credit or refund shall not exceed the portion of the tax paid during the 2 years immediately preceding the filing of the claim." 26 U.S.C. § 6511(b)(2)(B). It is undisputed that no tax was paid during the two years preceding the filing of the Newtons' claim. Thus, the recovery cap imposed by section 6511(b)(2)(B) prevents the Newtons from obtaining any refund from the IRS.
 
 
 31
 The Newtons argue that this court should apply the doctrine of equitable tolling to their tax refund claim, thereby suspending the requirements of sections 6511(a) and 6511(b)(2)(B). We are not willing to take that jurisprudential step. We note that courts have been particularly reluctant to apply equitable principles to toll statutes of limitation against the United States, on the theory that the United States can be sued only by virtue of its waiver of sovereign immunity and that the terms of any such waiver must be strictly construed. Irwin v. Veterans Affairs, 498 U.S. 89, 97-99, 111 S.Ct. 453, 458-60, 112 L.Ed.2d 435 (1990) (White, J., concurring); see United States v. Dalm, 494 U.S. 596, 608, 110 S.Ct. 1361, 1368, 108 L.Ed.2d 548 (1990). The situation presented in this case does not fall into that category of extraordinary circumstances that merits the employment of equitable tolling. During the years in which Amoco withheld windfall profit taxes on behalf of the Newtons, the Newtons received copies of Amoco's checks to the clerk of the court, along with check details listing windfall profit taxes withheld. Although they would not have known precisely what portion of the royalties they would eventually be entitled to, they could have sought refunds of the taxes under the assumption that they would ultimately prevail in the title dispute. Taking such action would have preserved their tax refund claims until the final resolution of the title dispute. See I.R.S. Announcement 83-39, "Protective Claims--Windfall Profits Tax," 1983-10 I.R.B. 29 (March 7, 1983) (suggesting protective claim when outcome of litigation concerning constitutionality of tax was uncertain and limitations might later bar that claim). Thus, the plaintiffs were not without adequate recourse.
 
 
 32
 The fact that the Newtons' portion of the royalties remained uncertain during the years in which the windfall profit taxes were withheld did not preclude them from filing a protective claim for refund of taxes and so place the IRS on notice that they intended to seek a refund of interest on withheld taxes, pending the outcome of the quiet title action. Even though a complete refund claim could not have been presented until July 1990, when the district court authorized the first of three distributions of the proceeds held in escrow, "to avert the bar of limitations, plaintiff should have gone as far as it reasonably could to protect its potential right to a refund." Kellogg-Citizens Nat'l Bank of Green Bay, Wis. v. United States, 330 F.2d 635, 639, 165 Ct.Cl. 452 (1964). This was not a situation in which the taxpayers had no knowledge that they would potentially have a refund claim. Indeed, they were fully informed that windfall profit taxes were being withheld by Amoco from the royalties derived from the disputed properties. It would have been entirely consistent with the Newtons' position in the ongoing title dispute for them to file protective refund claims. Filing such claims would have served both to avert the three-year time bar and to suspend the two-year cap on permissible recovery amounts.
 
 
 33
 Furthermore, even if we were to apply equitable tolling on behalf of the Newtons, we would do so only to delay the commencement of the statutory period until July 17, 1990, when the district court authorized the first of three distributions of the principal and interest that had been held in the escrow account. Even an equitably-tolled statutory period would have run by July 17, 1993, well before the Newtons filed their refund claim.
 
 
 34
 With respect to section 6511(b)(2)(B), in particular, the Newtons' plea for equitable tolling is misplaced. Section 6511(b)(2)(B) is not a statute of limitation; rather, it is a cap on permissible recovery amounts. As the Fourth Circuit has observed, section 6511(b)(2) is analogous to a statute of repose and is therefore less susceptible to judicial exception:
 
 
 35
 That § 6511(b)(2) is analogous to a statute of repose is significant given the well-recognized distinctions between statutes of limitations and statutes of repose. While the former is "a procedural device that operates as a defense to limit the remedy available from an existing cause of action," a statute of repose, in contrast, "creates a substantive right in those protected to be free from liability after a legislatively-determined period of time."
 
 
 36
 Webb v. United States, 66 F.3d 691, 700-01 (4th Cir.1995) (quoting First United Methodist Church v. United States Gypsum Co., 882 F.2d 862, 865-66 (4th Cir.1989) (citations omitted), cert. denied, 493 U.S. 1070, 110 S.Ct. 1113, 107 L.Ed.2d 1020 (1990)). A statute of repose presents "an absolute time limit beyond which liability no longer exists and is not tolled for any reason because to do so would upset the economic balance struck by the legislative body." United States Gypsum Co., 882 F.2d at 866; see Oropallo v. United States, 994 F.2d 25, 31 (1st Cir.1993). Thus, equitable tolling is not appropriate against a statute of repose.
 
 
 37
 For these reason, the Newtons' tax refund claim against the United States for interest on windfall profit tax withholdings is now time-barred. Nor may the Newtons recover interest on the withholdings from Amoco, given Amoco's obligation to withhold windfall profit taxes at the time of removal and its satisfactory compliance with the reporting requirements of the Internal Revenue Code. Accordingly, the decisions of the district court are AFFIRMED.
 
 
 
 [1]
 The situation in this case differs from that in Recovery Resources Corp. v. United States, 930 F.2d 804 (10th Cir.1991), where a producer elected to become a "qualified disburser" and file its own windfall profit tax returns. In that instance, the filing of a quarterly excise tax return started the limitation period. Id. at 805